WILLIAM VALENTINE and others *vs.* HARLOW C. WETHERILL
and others.

31b   655
37 Mis⁴596
31b   655
39 Mis⁴420

V. died intestate, in 1840, seised of certain real estate in fee, leaving him surviving a widow, and three children, to wit: H., C. and A. The widow married H. C. W., and by him had one child, H. W., who was still living and under age. The widow died in 1853. A. died in 1845, intestate and under age. H. was married to T. W. and by him had one child, and died in 1853, under the age of 21 years. The child afterwards died. C. died in 1856, unmarried and under the age of 21 years. In 1852 the premises were sold by order of the county court, upon the petition of the infants, H. and C., and the proceeds of the sale were brought into court. The plaintiffs claimed this fund as the brothers and sisters of V., the original owner, to the exclusion of H. W. the daughter of V.'s widow by the second marriage, and the claim of T. W. as tenant by the curtesy, in the share of H.

*Held*, 1. That at the time of the death of C. the whole fund had vested in her, not as personalty, but as realty; the fund continuing to be real estate, of the same nature as the property sold.

2. That one third of this she owned by descent directly from her father, and to the other two thirds she acquired title by descent from her brother and sister, H. and A., who took the same as heirs at law of their father.

3. That as to the one third derived by C. directly from her father, and as his heir at law, the plaintiffs were entitled to it, under the statute, inasmuch as the estate came to her by descent from her ancestor; and that H. W. not being of the blood of that ancestor, was excluded.

4. That the other two thirds came remotely or indirectly and by intermediate descent, from the same source, but it formed no part of the ancestral inheritance. That as to that portion the descent from H. and A. to C. was direct and immediate, and the latter took as their representative, and not as the heir of V. their common ancestor.

5. That H. W., the half sister, inherited immediately from the intestate, and was entitled to those two thirds of the estate.

6. That H. W. and T. W. were necessary parties to a suit brought for the purpose of having the rights of the several claimants of the fund determined.

APPEAL from the judgment of JOHNSON, J. at special term, declaring the rights of the respective parties to moneys in court, the proceeds of a sale of real estate of infants. F. H. Valentine died intestate in 1840, seised of the premises in fee, leaving him surviving a widow and three children, to wit: Hannah E., Catharine L., and Ananias.

The widow married Harlow C. Wetherill, and by him had

one child, Harriet Wetherill, who is now living and under age, but who is not a party to the suit. Harlow C. Wetherill is a party as her guardian. The widow died before the commencement of this suit, and about March, 1853. Ananias Valentine died intestate and under age in 1845. Hannah E. Valentine was married to Theodore Wetherill, and by him had one child, born living, since deceased, and died in 1853, under the age of 21 years. Catharine L. Valentine died in 1856, unmarried and under the age of 21 years.

The premises were sold in 1852, under the statute, by the direction of the county court of Cayuga county, and upon the petition of the infants, Hannah E. Valentine and Catharine L. Valentine, and the fund in court was realized upon such sale. The plaintiffs claim as the brothers and sisters of the original owner F. H. Valentine, to the exclusion of the half sister of Catharine L. Valentine and the claims of Theodore Wetherill as tenant by the curtesy in the share of Hannah E. Wetherill. The court, at special term, gave judgment for the plaintiffs, and declared them entitled to the whole fund.

*C. Andrus,* for the appellant.

*S. R. Cox,* for the respondent.

*By the Court,* ALLEN, J. There is a want of parties which will prevent this judgment being final in any respect. The suit was only necessary because of the adverse claims to the fund. But for them the court would have directed the payment of the moneys to the claimants, upon their ex parte petition. An action became necessary because other parties made claims to parts of the fund, and upon these claims questions not free from difficulty arise—questions which could not properly be settled upon a summary proceeding by petition. A formal adjudication, and the judgment of the court in a formal action, was considered, and properly considered, essential to the final determination of the rights of the claimants.

Valentine v. Wetherill.

The court so adjudged, on giving the parties their costs out of the fund. And yet the only adverse claimants making any thing like a plausible demand upon the fund are omitted as parties. If their claims are to be passed upon at all they are necessary parties. If their claims were so entirely unfounded as not to merit consideration, an action should not have been brought. The appellant, as guardian for the infant claimant as of the half blood of the last owner, was made a party as such and as representing the infant. But a decree against him as guardian does not bind the infant, and the surviving husband of Hannah E. Valentine was not made a party in any form. The suit is defective, and it does not cover the defect to say that on the judgment of the court the claims of the parties omitted cannot be sustained. Upon that question they are entitled to be heard. The defendant Harlow C. Wetherill has been treated by the plaintiffs as representing his infant ward, and they cannot now object to his right to appeal. The case, and the record, came up in an irregular form, and the record is almost without form, but enough appears to show this defect of parties. It was the duty of the court to order the parties named to be brought in. (*Code*, § 122.) For the reason that the judgment will not bind either Harriet Wetherill, the half sister of Catharine L. Valentine, or Theodore Wetherill, who claims as a tenant by the curtesy, the judgment should be reversed, to the end that they may, by proper proceedings, be brought in as parties and have the opportunity to assert their title.

But if the claims of these parties were before us, upon this record, I should be of the opinion that they were well founded; especially that of the half sister. At the time of the death of Catharine L., who died in 1856, under age and incapable of making a will of real estate, the whole fund had vested in her, not as personalty but as realty. For all the funds continued to be real estate of the same nature as the property sold. (2 *R. S.* 195, § 110. *Shumway* v. *Cooper*, 16 *Barb.* 556. *Foreman* v. *Foreman*, 7 *id.* 215 ; *S. C.* 1 *Ker.*

544.)    One third of this she owned by descent directly from her father ; the other two thirds she acquired title to by descent from her brother and sister, who took the same as heirs at law of their father.    The original source of title was the father, and if it is necessary that the person taking by descent from Catharine L. should be of his blood, then the half sister cannot take, as she has none of his blood, being the daughter of his widow, by a subsequent marriage.    As to the one third derived directly from the father and as his heir at law, by Catharine L., there can be no question.    The plaintiffs are unquestionably entitled to it, under the statute.    The estate came to Catharine L. by descent from her ancestor, and Harriet Wetherill, not being of the blood of that ancestor, is excluded.    (1 *R. S.* 753, § 15.)

The total exclusion of the half blood from the inheritance is almost peculiar to the common law, and was founded on reasons peculiar to the English tenures, and grew out of the feudal system.    The difficulty of tracing the descent from the first feudatory compelled a departure from the strict proof which the rule would have required and the substitution of a more simple rule of evidence, and at common law even it is necessary that the claimant be next of the whole blood to the person last in possession, (or derived from the same couple of ancestors.)    (2 *Bl. Com.* 228.)    This rule does not secure any greater certainty that the estate will go to the heir of the first purchaser than if the half blood of its last possessor were allowed to inherit.    (*Id. note* 29.)

So that it is in truth a rule of evidence and not a rule of descent.    The exclusion of the half blood is looked upon as a hardship, and as no necessity growing out of our tenures exists for its contiuance, it has been abrogated, except in the case provided for by statute, and perhaps some exceptional cases not provided for by the express provisions of the act regulating descents.    In this state with others there is no distinction between the whole and the half blood, as to descents from brothers and sisters, except in the case of ancestral in-

Valentine v. Wetherill.

heritances. (4 *Kent's Com.* 403, 4.) The law has continued without change in this respect, since 1786. (1 *R. S.* 53, § 3.) The principle was extended by the revised statutes. (1 *id.* 753, § 15. 3 *id.* 2d ed. 604, *Revisers' Notes.*)

There was no father or mother to inherit from Catharine, and the estate consequently descended to her collateral relatives, and first to her brothers and sisters if any were living, or to the descendants of such as had died. (1 *id.* 752, §§ 7, 8.) By § 15 it is declared that relatives of the half blood shall inherit equally with them of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors : in such case all those who are not of the blood of such ancestor shall be excluded from such inheritance.

Unless the exception in the 15th section excludes the half sister of Catharine, and this section must be read in connection with §§ 8 and 9, as showing who are brothers and sisters capable of inheriting as of the blood of the last possessor, the plaintiffs cannot claim under §§ 10, 11 and 12, which only provide for a descent to the paternal or maternal relatives in case there be no heir entitled to take under the preceding sections. The one third of the estate did come from the ancestor (the father) of Catharine, and as to that, Harriet Wetherill, the half sister, is excluded. The other two thirds came remotely or indirectly and by intermediate descent, from the same source, but it formed no part of the ancestral inheritance. It came to the intestate by descent from her collateral relatives, to wit, her brother and sister. The term "ancestor" is used in its proper sense, in the statute, and designates the immediate not the remote source of the intestate's title. It is not equivalent to the expression "the parent or other kindred of the intestate," as used in the statutes of Rhode Island. "Ancestors," derived from antecessores, designates the ascendants of the intestate in the right line, as father and mother, grandfather and grandmother, and does not include collateral relatives as brothers and sisters. (2 *Bouv. Inst.* 355. *Bouv.*

*Law Dic.* 2 *Bl. Com.* 209.) Chancellor Kent recognizes the : distinction between " ancestral and collateral" inheritances, and considers the distinction between whole and half blood, which is substantially abrogated or confined to the former. (4 *Kent's Com.* 404.) The descent from Hannah and Ananias to Catharine was direct and immediate, and the latter took as their representative and not as the heir of their common ancestor. (*McGregor* v. *Comstock,* 3 *Comst.* 408.) In *Brown* v. *Burlingham,* (5 *Sand. S. C. Rep.* 418,) it is decided that the rule of the common law that on the descent of a newly purchased inheritance the blood of the father is to be preferred, is not applicable when the descent is to brothers and sisters, or their descendants, and that the rule was in fact abolished in every case of descents for which the statute provides. The statute looks only to the last possessor of the inheritance, and does not refer to the original source of title, or to him who was last in as purchaser. *Gardner* v. *Collins,* (2 *Pet.* 58,) arose under a law of Rhode Island similar and the same in substance with our own statute, and the case is on all fours with this. The Rhode Island statute is, " When the title to any estate of inheritance, or to which the person having such title shall die intestate, came by descent, gift or devise from the parent or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin next to the intestate of the blood of the person from whom such estate came or descended, if any there be." John Collins demised the estate to his daughter Mary Collins in fee. Mary Collins intermarried with one Gardner, and on her death the estate descended to her three daughters, two of whom died intestate, and the survivor, Mary C. Gardner, became seised of the whole estate and died in 1822. It was held that two thirds of the estate descended to the children of Gardner, the husband of Mary Collins, by a former wife, being brothers and sisters of the half blood of Mary C. Gardner. This case is recognized in *Beebee* v. *Griffing,* (4 *Kern.* 235,) as giving the construction of a statute of descents as applicable to the laws

of this state as to those of Rhode Island, in reference to which it was made. The half sister inherits immediately from the intestate, and is entitled to two thirds of the estate.

The judgment must be reversed and the case remitted, with leave to the plaintiffs to amend their complaint by adding parties as they shall be advised. The costs to abide the event and final order of the court.

[ONONDAGA GENERAL TERM, July 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]