57b    265
38 Mis 412

ELIZABETH M. CONKLING *vs.* J. ROMAINE BROWN.

On the 26th of October, 1848, B. M. died intestate, seised in fee of certain premises, leaving no widow or descendants him surviving, but leaving a sister, M. C. and a grand-nephew, A. M. W. his only heirs at law. M. C. and A. M. W. inherited the lands, as tenants in common, in fee, and afterwards made an amicable partition, by which the premises fell to the share of A. M. W., and a release of the same was made to him, by M. C., dated May 15, 1849. A. M. W. died November 22, 1849, seised in fee of his portion of said lands, intestate, unmarried and without descendants, and leaving no father, but leaving a mother, M. H. who, after the death of her first husband, the father of A. M. W., and during the lifetime of A. M. W., had married a second husband, G. H., by whom she had children, brothers and sisters of the half blood to A. M. W., but not of the blood of B. M. the ancestor of A. M. W., and who were living at his death.

*Held* 1. That A. M. W. and M. C., being tenants in common, each was seised solely or severally of his undivided share of the land; and all there was of unity between them was of possession, not of estate, in the land.

2. That such possession they could sever and divide, and assign to each his separate part by parol; and the releases which they executed effected nothing more. Neither acquired any new estate.

3. That upon the death of A. M. W., intestate, unmarried, without descendants, leaving no father, the fee descended to his mother, M. H., and to the exclusion of the brothers and sisters of the half blood of A. M. W., they not being of the blood of B. M., the ancestor of A. M. W.

THIS is a controversy submitted without action, pursuant to section 372 of the Code of Procedure, and the following is the case agreed upon :

Elizabeth M. Conkling and Thomas Pruden, made a contract in the words and figures following, to wit:

"Articles of agreement, made the 17th day of September, one thousand eight hundred and sixty-nine, between Elizabeth M. Conkling, individually, and as sole executrix of Jonas Conkling, deceased, of the first part, and Thomas Pruden, of the said city of New York, of the second part, in manner following: The said party of the first part, in consideration of the sum of five hundred dollars to her duly paid, hereby agrees to sell unto the said party of the second part, and the said party of the second part agrees to purchase all that certain piece or parcel of land, situate,

and being on the westerly side of Seventh avenue, in the twenty-second ward of the city of New York: Beginning at a point on said westerly side of Seventh avenue, distant forty-one feet and six inches southerly from the south-westerly corner of Fiftieth street and Seventh avenue; thence southerly, parallel with Seventh avenue, thirty-three feet six inches; thence westerly, parallel with Fiftieth street, ninety feet; thence northerly, parallel with Seventh avenue, thirty-three feet six inches; and thence easterly, ninety feet, to the place of beginning; the party of the first part to remove the sheds, &c., now on said premises; for the sum of fourteen thousand five hundred dollars, which the said party of the second part hereby agrees to pay to the said party of the first part, as follows: Five hundred dollars on the execution and delivery of this contract, the receipt whereof is hereby acknowledged; seven thousand dollars in cash on the first day of November next, when the deed for said premises is to be delivered; and the balance, to wit, seven thousand dollars by the bond and mortgage of the party of the second part, or his assigns, on said premises, payable on or before the 1st day of November, 1872. The deed, and bond and mortgage to be delivered at the office of Thomas H. Barowsky, No. 14 Wall street, on 1st November next at 12 o'clock, noon. And the said party of the first part on receiving such payments at the times and in the manner above mentioned, shall at her own proper costs and expense execute and deliver to the said party of the second part, or to his assigns, a proper deed for the conveying and assuring to him or them the fee-simple of the said premises, free from all incumbrance; which deed shall contain a general warranty and the usual covenants. And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties.

In witness whereof the parties to these presents have

hereunto set their hands and seals the day and year first
above written.          ELIZABETH M. CONKLING,    [L. S.]
                              THOMAS PRUDEN.            [L. S.]
   Sealed and delivered in presence of
      Lizzie H. Zerega."

   This contract was assigned by the said Thomas Pruden,
to the defendant J. Romaine Brown, by an assignment in
the words following, to wit:

   "Know all men by these presents that I, Thomas Pruden,
for and in consideration of one dollar to me in hand paid,
the receipt of which is hereby acknowledged, I hereby
assign and set over to J. Romaine Brown, all my right,
title and interest in the within contract.

   Dated New York, September 8, 1869.

                              THOMAS PRUDEN.    [L. S.]
   Witness, J. H. Morris."

   When the time came for performing this contract, the
defendant, J. Romaine Brown, refused to complete, under
the advice of his counsel, Messrs. Wetmore & Bowne, on
the ground that the title to said premises was defective.
The defendant therefore, and the plaintiff, have agreed to
submit the question of title to the general term of the
Supreme Court; and if they hold the title to be good and
valid, that they give judgment that the said plaintiff ex-
ecute and deliver the said deed mentioned in said con-
tract, subject however to all taxes and assessments which
shall have been confirmed as liens upon said premises,
after the first day of November, 1869; and that said de-
fendant shall pay for the premises according to the terms
of the contract; and also shall pay all taxes and assess-
ments confirmed as a lien on said premises, and one hun-
dred and fifty dollars as liquidated costs in this proceeding;
and if they find the title bad, that they give judgment that
all payments which have been made to the said plaintiff
under such contract, shall be refunded, with interest, to
the said defendant, and that said plaintiff shall pay all costs

and expenses of this proceeding; the same, however, not to exceed the sum of two hundred dollars; and that the said contract shall end and determine and be altogether annulled, and the said parties wholly released therefrom.

The question to be decided by the court is, whether Mary Hill, the grantor of the plaintiff's testator, under our statutes of descent, on the death of her son, Augustus M. Winter, acquired a fee in the said premises, an estate for life, or some lesser estate.

On the 26th of October, 1848, Boltes Moore died intestate, and seised in fee of the premises in question, leaving no widow or descendants him surviving; but a sister, Margaret Cheesbrough, and a grand-nephew, Augustus M. Winter, the son of a deceased nephew, and a grandson of a deceased sister, his only heirs at law; Margaret Cheesbrough and Augustus M. Winter inherited the lands of Boltes Moore referred to, as tenants in common in fee, and afterwards made an amicable partition; the premises in question fell to the share of Augustus M. Winter, and a release of the same was made to him by Margaret Cheesbrough, dated May 15, 1849. Augustus M. Winter died November 22, 1849, seised in fee of his portion of the lands so released and so descended to him from Boltes Moore, intestate, unmarried and without descendants, and leaving no father, and leaving a mother named Mary Hill, who after the death of her first husband, the father of Augustus M. Winter, and during the lifetime of said Augustus M. Winter, had married a second husband named George Hill; and by her last husband had children, brothers and sisters of the half blood to the said Augustus M. Winter, but not of the blood of Boltes Moore, the ancestor of said Augustus M. Winter, and who were living at his death.

Q. 1. Did the inheritance in the lands in question come to the said Augustus M. Winter by descent from his ancestor?

Conkling *v.* Brown.

2. To whom did the lands of the said Augustus M. Winter descend on his death, intestate and without descendants, and leaving no father, and leaving his mother surviving, and brothers and sisters of the half blood to him, but not of the blood of his ancestor? (*a*)

(*a*)The same facts that appear in the case agreed upon having been submitted to the Hon. William Inglis and Charles O'Conor, Esq., the following is their opinion as to the questions of law:

In relation to the case of Augustus M. Winter's half brothers and sisters, it is to be observed that by the common law, the half blood was entirely excluded from the inheritance, and rather than it should take, the lands were subject to escheat; this principle was subsequently modified, and the half blood was, in certain cases, permitted to inherit. The rule applicable to this subject, reënacted from an older statute, is to be found in 1 *R. S.* 753, § 15, *ch.* 2, *title* 5. By that statute it is provided that relations of the half blood shall inherit equally with those of the whole blood, in the same degree, and the descendants of such relations shall inherit in the same manner as the whole blood, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who were not of the blood of such ancestor, shall be excluded from such inheritance.

Under this statute the first question in the particular case is, how did the inheritance come to the intestate Augustus M. Winter?

It is conceded that it came to him by descent from Boltes Moore. Is Boltes Moore Augustus M. Winter's ancestor, within the meaning of the statute? The word ancestor, as used in this part of our statute of descents does not merely refer to the person from whom natural descent was claimed in a direct line; it also includes a person from whom property comes, though he be a collateral relative. The proper meaning of the word ancestor—ante cessor, being one who has preceded in the inheritance. In this case then, Boltes Moore is the ancestor spoken of by the statute, from whom the inheritance came to Augustus M. Winter, by descent. It is evident that Augustus M. Winter's half brothers and sisters are not of the blood of Boltes Moore. The statute therefore quoted above, by its express terms, excludes them from the inheritance.

It makes no difference as to the exclusion, as it has been suggested that it might, whether the lands that descended from Boltes Moore to Augustus M. Winter, came to Boltes Moore from a common ancestor, or whether Boltes Moore purchased them himself. The meaning and policy of the statute equally apply to all lands which the ancestor owned, in what way soever the title came to him. The statute does not make any inquiry how the ancestor acquired the land; it seeks only to exclude from the inheritance those not of his blood; this view of the 15th section is also taken by Chancellor Kent. (*See note to* 4 *Kent's Com.* 404.) The policy of preserving an ancestral inheritance in cases

*Thomas H. Barowsky*, for the plaintiff.

I. The premises in question came to Augustus M. Winter by descent, from Boltes Moore, he having died intestate, unmarried and without issue, leaving a sister, Margaret Cheesbrough, and a grand-nephew, Augustus M. Winter, who was the grandson of a deceased sister, his only heirs at law. By the provisions of our Revised

of intestacy, in the blood of the ancestor from whom it came, is also found in other cases in the statute of descent, sections 11 and 12.

The course of descent is not changed by the fact that there was a partition of the estate descended from Boltes Moore to Margaret Cheesbrough and Augustus M. Winter, as tenants in common, by Margaret Cheesbrough and Augustus M. Winter having mutually released to each other, and holding particular portions afterwards in severalty. The title of each of them is still by descent from Boltes Moore.

It would appear, therefore, that the half brothers and sisters of Augustus M. Winter are excluded from the inheritance, in this case. The question then remains as to the right of the mother of Augustus M. Winter.

In our statutes of descent two provisions have been introduced which were unknown to the common law, which permit the father and mother to inherit in certain cases. (§§ 5, 6.) The 5th section directs that in case the intestate dies without lawful descendants, and leaving a father, then the inheritance shall go to such father, unless the inheritance came to the intestate on the part of his mother, and such mother be living; but if such mother be dead, the inheritance descending on her part shall go to the father for life, and the reversion to the brothers and sisters of the intestate and their descendants, according to the law of inheritance by collateral relations hereinafter provided; if there be no such brothers or sisters or their descendants living, such inheritance shall descend to the father in fee. The father is entitled to take, under this provision, an inheritance from his child, even where it had come from an ancestor of whose blood the father had none, and when even, if the father were dead, the half blood brothers and sisters of the intestate on the part of such father would be excluded under the 15th section.

The exclusion of the half blood under the 15th section of the Statutes does not apply to a father or mother, for they cannot properly be designated as being relatives of the half blood to their children. By this provision of the statute, the father of Augustus M. Winter, if living, would be entitled to take the inheritance in fee, (it not having descended from the intestate's mother to the exclusion of Augustus M. Winter's brothers and sisters, whether of the whole or the half blood.)

By the 6th section of the statutes of descents, the rights of descent to the mother of the intestate is somewhat different; where there are no descendants

Conkling *v.* Brown.

Statutes, Margaret Cheesbrough and Augustus M. Winter inherited each an equal share of his estate. (3 *R. S.* 41, §§ 7, 8, *5th ed.*)

II. Augustus M. Winter and Margaret Cheesbrough inherited the estate of their ancestor, Boltes Moore, in fee and as tenants in common. (3 *R. S.* 42, § 17.  5 *id.* 10, § 2.)

III. The course of descent is not changed by the fact

and the father is dead, or not entitled to take, the mother takes a life estate, and the inheritance goes to the brothers and sisters; the statute then adds, if the intestate in such case shall leave no brother or sister, nor any descendants of any brother or sister, the inheritance shall descend to the mother in fee.

There is a slight difference in phraseology between the 5th and 6th sections of the statute. When the inheritance comes on the side of the intestate's mother, the 5th section gives the inheritance to the father for life, and the reversion to the brothers and sisters, according to the law of inheritance by collateral relations, hereinafter provided. The 5th section then provides that if there be no such brother or sister or their descendants living, it shall descend to the father in fee. The statute supposes that the intestate might have brothers and sisters living, but not such as might inherit.

In the 6th section the word "such" is omitted in speaking of the case of brothers and sisters, and it may be asserted that if the intestate leaves any brothers or sisters, even if not entitled to inherit, the mother cannot take the fee; because the literal prerequisite to her inheriting, expressed in the statutes, is not complied with, there being brothers and sisters.

The construction, however, of the 6th section, would probably be considered too strictly verbal, as against the mother of the intestate, and the omission of the word "such," as contained in the 5th section of the statute, relating to the intestate's father, would probably be considered a mere accidental variation of the language. This view is strengthened by the consideration that the 5th section of the statute, providing for the case of the father, was introduced into the law of descents on the suggestion of the revisors, whereas the 6th section, providing for the case of the mother, was inserted by the legislature after the revision was submitted to it. (*See Revisors' Notes,* 3 *R. S.* 603.) The section, therefore, being penned by different authors, might easily vary in phraseology, even where a similar object was in view. The legislature intended, by introducing the new canon of descent in favor of the mother, to give her the same privileges, in most respects, in the succession to her children's property, as the revisors had provided for the father. The sections appear to be for the most part counterparts of each other, and it is hardly to be supposed that the legislature intended to exclude the mother from inheritance, because there were brothers and sisters of the half blood who could not, in the particular case, where just before a rule had been laid down as respects the father. The word

that there was an amicable partition of the estate descended from Boltes Moore to Augustus M. Winter and Margaret Cheesbrough, as tenants in common, by Margaret Cheesbrough and Augustus M. Winter mutually releasing and assuring to each other by deed the several estates which they afterwards held in severalty. The title to each of them is still by descent from Boltes Moore, their ancestor, they having acquired the estate by right of representation as his heirs at law, and not by any act or agreement of their own. (2 *Black. Com.* 160, § 200, *and* 193, § 241. 4 *Kent's Com.* 371. *Wood* v. *Fleet,* 36 *N. Y. Rep.* 499.)

IV. The manner in which the estate held by Margaret Cheesbrough and Augustus M. Winter, as tenants in common, was severed, by Margaret Cheesbrough and Augustus M. Winter releasing and assuring to each other by deed their respective shares, was a customary and lawful mode of making partition, especially where the parties are few in number and can make an amicable partition, as they did in their case, without application to the court, as prescribed by our Revised Statutes. (3 *Black. Com.* 157, § 324, *p.* 259. 3 *Cruise's Dig.* 142, §§ 8, 9, 10. *Willard on Real Estate,* 185, 435. 4 *Kent's Com.* 363. *Morris* v. *Ward,* 36 *N. Y. Rep.* 587.)

V. In the construction of the deeds of partition, executed by Margaret Cheesbrough and Augustus M. Winter, "it shall be the duty of the court to carry into effect the in-

brother or sister, in the last sentence of the sixth section of the statute, is therefore to be considered, not as referring to any persons of that degree, whether of the whole or of the half blood, but refer only to those who are capable of inheriting under the statute; the brothers and sisters of the half blood being in this case excluded from the inheritance, are not considered by the 6th section of the statute, and it would seem that the mother would take the lands in question in fee.                                          WM. INGLIS.
     April 17th, 1850.

     I have carefully considered the question presented by the above case, and am decidedly of opinion that the mother takes the land in fee.
     New York, April 17th, 1850.                          CH. O'CONOR.

Conkling v. Brown.

tent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law." (3 *R. S.* 38, § 2, *5th ed.*)

VI. "The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent and not the words is the essence of every agreement." (*Jackson* v. *Blodget,* 16 *John.* 172. *Same* v. *Myers,* 3 *id.* 395. *Same* v. *Beach,* 1 *John. Cas.* 102.) In *French* v. *Carhart,* (1 *Comst.* 152,) Jewett, Ch. J., says: "Where the language of a deed will bear more than one interpretation, looking only to the instrument, the court will look to the surrounding circumstances existing when the contract was made, such as the situation of the parties and the subject matter of the contract."

VII. The agreement to divide the estate held by Margaret Cheesbrough and Augustus M. Winter, as tenants in common, and their subsequently releasing and assuring to each other their respective shares according to the agreement—the two instruments executed by them, and relating to the partition and division of the estate—may be considered as parts of one assurance. (*Jackson* v. *Dunsbagh,* 1 *John. Cas.* 91. *Stow* v. *Tifft,* 15 *John.* 458.)

VIII. The half brothers and sisters of Augustus M. Winter are excluded from the inheritance, they not being of the blood of Boltes Moore, the ancestor of Augustus M. Winter. (3 *R. S.* 42, §§ 6, 15. *Kent's Com.* 404, *n. a and b, 5th ed. Black. Com., book* 2, §§ 220–224; §§ 227–229, 235, 236.) If the intestate shall die without descendants and leaving no father, or leaving a father not entitled to take the inheritance under the last preceding section, and leaving a mother and a brother or sister, or the descendant of a brother or sister, then the inheritance shall descend to the mother during her life, and the reversion to such brothers and sisters of the intestate as may be living, and the descendants of such as may be dead, according

to the same law of inheritance hereinafter provided. If the intestate in such case shall leave no brother or sister, nor any descendants of any brother or sister, the inheritance shall descend to the mother in fee. (3 *R. S.* 41, § 6, *5th ed.*) Relatives of the half blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance. (3 *R. S.* 42, § 15, *5th ed.*)

IX. Augustus M. Winter having died intestate, unmarried, and without descendants, leaving no father, and leaving brothers and sisters of the half blood, but not of the blood of Boltes Moore, and who were, by the 15th section of the Revised Statutes, excluded from the inheritance, upon the death of Augustus M. Winter, the premises in question descended to Mary Hill, his mother, in fee. (3 *R. S.* 41, 42, §§ 6, 15.)

X. As to the general rules which are applied to the interpretation of statutes. (*See* 1 *Kent's Com.* 461, 468, *5th ed.*; *Matter of Brown,* 21 *Wend.* 316; *Yates' Case,* 4 *John.* 359.)

XI. The court should, on the case agreed upon, render judgment for the plaintiff.

*Wetmore & Bowne,* for the defendant.

I. Augustus M. Winter acquired one half of these lands, not by descent, but by purchase. 1. By agreement between Mrs. Cheesbrough and Mr. Winter these lands, which descended to them, as tenants in common, from Boltes Moore, were divided. He released certain of the lands to her, and she released these lands to him. This may be called partition, release, or agreement; it required and was consummated by bargain; it was a purchase. Descent is

defined to be, that estate which a man takes from his ancestor by single operation of law; purchase, that which a man hath by his own act or agreement. (2 *Black. Com.* 241.) 2. Title acquired by purchase gives to the owner a new inheritable quality, and is descendible to his blood in general, and not to the blood only of some particular ancestor. (2 *Black. Com.* 243. *Valentine* v. *Wetherell,* 31 *Barb.* 655. *Beebee* v. *Griffing,* 14 *N. Y. Rep.* 235.) 3. It follows, that as respects the one equal half part of the lands of which Augustus M. Winter died seised, it descended to his mother for life, and the reversion to his brothers and sisters in fee. (*Cases above cited.*)

II. The mother of Augustus M. Winter took a life estate only in the lands descended from him. Our statutes of descent, among other provisions, provide that where the intestate shall die without descendants, and leaving no father, or father not capable of inheriting, and leaving a mother and brothers and sisters, the inheritance shall go to the mother for life, and the reversion to the brothers and sisters; but if the intestate shall leave no brother or sister, then the inheritance shall descend to the mother in fee. (1 *R. S.* 752, § 6.) Relatives of the half blood shall inherit equally with those of the whole blood, unless the intestate came to the estate by descent, or gift from some one of his ancestors, in which case all those who are not of the blood of the ancestor shall be excluded from the inheritance. (1 *R. S.* 753, § 15.) In cases not provided for, the inheritance shall descend according to the course of the common law. (1 *R. S.* § 16.) At common law neither the mother nor brothers of the half blood could inherit. It is only by force of the statute that the mother inherits, and this statute has failed to provide for this case. Augustus M. Winter left, beside his mother, brothers and sisters; his mother took by statute a life estate and no more; to give her a fee, we must interpolate and add words to the statute, which the legislature have

done in case of a father not capable of inheriting, but wholly omitted in the case of brothers and sisters. To give the mother a fee, the sentence should read, "if the intestate shall leave no brother or sister, *or brother or sister incapable inheriting,* then the inheritance shall descend to the mother in fee." But the legislature have not said so, and the inability of the mother to inherit, which existed at common law, has not been removed by the statute.

We must seek elsewhere for the heirs at law of Augustus M. Winter, upon whom these lands descend in fee.

III. Judgment should be rendered in favor of the defendant, according to the agreement.

*By the Court,* CARDOZO, J. The lot in question is part of land which descended from Boltes Moore to Augustus M. Winter and Margaret Cheesbrough, who thus became tenants in common. Being such tenants in common, each was seised solely or severally of his undivided share of the land, and all there was of unity between them was possession, not estate, in the land, (4 *Kent. Com.* 368,) and that possession they could sever and divide, and assign to each his separate part by parol; and the releases which they executed effected nothing more. Neither acquired any new estate. (*Wood* v. *Fleet,* 36 *N. Y. Rep.* 499.) Upon the death, therefore, of Augustus M. Winter, intestate, unmarried, without descendants, leaving no father, the fee descended to his mother, Mrs. Mary Hill, and to the exclusion of the brothers and sisters of the half blood, of Mr. Winter, they not being of the blood of Mr. Moore, the ancestor of Mr. Winter. (1 *R. S., Edm. ed., p.* 702, *et seq. Morris* v. *Ward,* 36 *N. Y. Rep.* 587.)

There must be judgment for the plaintiff, on the submission.