(3 Misc. Rep. 309.)

HUNT v. KINGSTON et al.

(Common Pleas of New York City and County, Special Term. April 1, 1893.)

DESCENT AND DISTRIBUTION—COLLATERAL RELATIVES.

Where an intestate leaves as his nearest relatives a great-uncle, great-aunts, and descendants of great-aunts, the great-uncle will inherit to the exclusion of the females of the same degree and their descendants, as at common law, since the New York statute of descents (4 Rev. St. [8th Ed.] p. 2463 et seq.) includes no other collateral relatives of an intestate than brothers, sisters, uncles, and aunts, and their descendants.

Action by John T. Hunt against Alice Kingston and others to foreclose a mortgage. Edward J. McGough moves to confirm the referee's report in proceedings relative to surplus moneys arising on the sale of mortgaged premises.

The matter was referred to Richard M. Henry, Esq., referee, who, among other things, found as findings of fact:

"Third. That John J. Bradley, in his lifetime, was the owner in fee of the premises foreclosed in this action; and on his death, in August, 1891, left him surviving the following relatives: Alice Kingston and Catherine Smith, grandaunts, and who were the sisters of John J. Bradley's paternal grandmother; also Edward J. McGough, (sometimes called Edward McGough,) the son of Patrick McGough, a granduncle, who was a brother of John J. Bradley's paternal grandmother; also James McCusker, (sometimes called McCloskey,) Mary Cavanaugh, (or Cavanagh,) and Sarah Ann Finnan, children of Rose McCusker, a grandaunt, who was a sister of John J. Bradley's paternal grandmother. That said Sarah Ann Finnan died, leaving her surviving her husband, Hugh Finnan, and five children, Lawrence Finnan, James Finnan, Mary Ann Finnan, Rose Finnan, (wife of William J. Godfrey,) and Julia Finnan; also Margaret Healy and Mary Colby, the daughters of Margaret Trainor, a grandaunt, who was a sister of John J. Bradley's paternal grandmother; and also James O'Neill, John O'Neill, and Edward O'Neill, the sons of Ann O'Neill, a grandaunt, who was a sister of John J. Bradley's paternal grandmother. That all the said grandaunts of the deceased, John J. Bradley, except Alice Kingston and Catherine Smith, are dead, and that the said granduncle, Patrick McGough, is dead. Fourth. That there are no other living relatives of the said John J. Bradley, deceased, than those above referred to. Fifth. That the said Edward J. McGough was the only son of Patrick Mc-

Gough, who was the only son of Edward McGough, father of the paternal grandmother of the said John J. Bradley, deceased. Sixth. That the said John J. Bradley was unmarried, and died, leaving him surviving no child or adopted child or children, and no descendant of any child or adopted child; no brother or sister, and no descendant of any brother or sister; no father, no mother; no uncle or aunt; and no descendant of any uncle or aunt; and no relatives except as above set forth."

And as conclusions of law:.

"(1) That said Edward J. McGough (otherwise called Edward McGough) is the only heir at law of the said John J. Bradley, deceased, entitled to [in-herit the said surplus money. (2) That there is due and owing to said Edward J. McGough, (otherwise called Edward McGough,) one of the claimants to the surplus money in this action, the whole amount of the said surplus, viz. the sum of $2,214.43, less the costs and expenses of this reference."

Exceptions to the report of the said referee were filed by the guardian ad litem for the infant defendants to the fourth finding of fact and the first and second conclusions of law. The exception to the fourth finding of fact was withdrawn before argument on the exceptions was heard. The referee's report is accompanied by an opinion, wherein he holds that under the circumstances the inheritance shall descend according to the course of the common law, and that Edward J. McGough, the sole heir at law of Patrick McGough, granduncle of the deceased, takes the whole inheritance or surplus money to the exclusion of his surviving grandaunts and the descendants of deceased grandaunts.

Henry A. Gumbleton, for defendants Alice Kingston and others.

Johnston & Johnston, for Lewis Johnston, guardian ad litem for infant defendants.

GIEGERICH, J. The only relatives whom the intestate left him surviving are collaterals, and they are so remote that the inheritance descends according to the course of the common law. Rev. St. pt. 2, c. 2, § 16; 4 Rev. St. (Banks Bros.' 8th Ed.) p. 2466; 4 Kent, Comm. (13th Ed.) p. 411. The principal question presented for solution is whether the second general rule or canon of the common law, that male issue shall be admitted before the female, still applies to a remote case of collateral kinship in this state. It is claimed on behalf of the infant defendants, who are the descendants of deceased grandaunts of the intestate, that this rule or canon does not prevail in the United States; and the editors' footnotes to Chase's Bl. Comm. pp. 385, 397; Williams, Real Prop. (2d Amer. Ed.) p. 106; 3 Washb. Real Prop. (5th Ed.) p. 12,—are cited in support of this contention. The learned editors do not, however, refer us to any statute or other authority, and these notes, therefore, are practically of no value. Although the common-law rule that males shall be admitted before females has been superseded in certain cases in this state, yet it still obtains in cases of remote collateral kinship, (4 Kent, Comm., 13th Ed., p. 411,) of which the case under consideration presents a remarkable example. It is fair to presume, under the circumstances, that the remarks of the editors in question were intended to apply only to such cases where the rule giving a preference of males has been superseded by express legislative en-

actment, and that they did not have in view a case where the in-testate left him surviving only the issue of a granduncle, grand-aunts, and the issue of a deceased grandaunt. A careful examina-tion of the Revised Statutes relative to the descent of real property, shows that the rule referred to has been superseded only in cases where the right to succeed to the inheritance is expressly given by statute. But the innovation, so far as it relates to collateral kin-ship, has not been carried further than to the descedents of broth-ers' and sisters' children to the remotest degree, to the brothers and sisters of the father of the intestate and their descendants, and then to the brothers and sisters of the mother of the intestate and their descendants, or to the brothers and sisters of both father and mother of the intestate and their descendants, according to the va-rious ways in which the estate may have been acquired. 4 Rev. St. (Banks Bros.' 8th Ed.) pp. 2463-2467; 4 Kent, Comm. (13th Ed.) p. 411. The rights of great-uncles and great-aunts and their descend-ants are laid down by Remsen in his very handy work on Intestate Succession in New York, in the following language:

"Great-uncles and great-aunts inherit no portion of the real estate of a de-ceased, if such deceased leaves any descendant,—parent, brother, sister, de-scendant of a brother or sister, uncle, aunt, or descendant of an uncle or aunt. If the deceased leaves a widow, the real estate is taken subject to her rights. If the deceased leaves a husband, to whom a child was born alive, the real estate is taken subject to the husband's right of curtesy. Where great uncles and aunts are not excluded as above, they inherit according to the course of the common law. The common-law rules or canons of descent, as given by Sir William Blackstone in the second book of his Commentaries, (page 207 et seq.,) are as follows: (1) The first rule is that inheritances shall lienally descend to the issue of the person who last died actually seised in infinitum; but shall never lineally ascend. (2) A second general rule or canon is that the male issue shall be admitted before the female. (3) A third rule or canon of de-scent is this: that where there are two or more males in equal degree, the eldest only shall inherit; but the females all together. (4) A fourth rule or canon of descent is this: that the lineal descendants in infinitum of any per-son deceased shall represent their ancestor; that is, shall stand in the same place as the person himself would have done had he been living. (5) A fifth rule is that, on failure of lineal descendants, or issue of the person last seised, the inheritance shall descend to his collateral relations, being of the blood of the first purchaser, subject to the three preceding rules. (6) A sixth rule or canon, therefore, is that the collateral heir of the person last seised must be his next collateral kinsman of the whole blood. (7) The seventh and last rule or canon is that in collateral inheritances the male stocks shall be preferred to the female, (that is, kindred derived from the blood of the male ancestors, however remote, shall be admitted before those from the blood of the female, however near.) unless where the lands have in fact descended from a female." Remsen's Intestate Succession, (2d Ed.) pp. 100–102.

Chancellor Kent, in referring to these peculiar features of our law of descents, says:

"It is a matter of some surprise that the Revised Statutes of New York did not proceed, and, in cases not provided for, follow the example of the law of descents in most of the states of the Union, and direct the inheritance to the next collateral kindred, to be ascertained, as in the statute of distri-bution of the personal estate of intestates, by the rules of the civil law. Instead of that, we have retained in New York, in these remote cases, the solitary example of the application of the stern doctrine and rules of the com-mon law." 4 Kent, Comm. (13th Ed.) 411.

And the learned commentator also furnishes us with the reasons why they have not been altered, in these words:

"The claims of such remote collaterals are not likely to occur very often; and, as the stream of the natural affections, so remote from the object, must flow cool and languid, natural sentiments and feelings have very little concern with the question." Id. 411.

Inasmuch as the common-law rules or canons of descent still apply in cases where granduncles and grandaunts and their descendants inherit from the intestate, it follows that the referee was correct in his conclusions that Patrick McGough, under rule 2, takes the whole of the inheritance, to the exclusion of his sisters and their descendants; and also that, Patrick McGough being dead, leaving Edward J. McGough his sole heir at law, the said Edward J. McGough, under rule 4, takes the whole inheritance or surplus money, to the exclusion of the decedent's surviving grandaunts and the descendants of the decedent's deceased grandaunts.

The referee's report is therefore confirmed.