LOUIS O. ROTENBACH, Plaintiff, *v.* SARAH ELIZABETH YOUNG and Others, Defendants.

Supreme Court, Kings Special Term, September, 1922.

**Real property — descent — relatives of the half-blood — when only those of the blood of the ancestor can inherit.**

Under rule 113 of the Rules of Civil Practice a summary judgment may be given upon a counterclaim in a proper case and the relief should not be denied because the only question involved is one of law.

Relatives of the half-blood are permitted to inherit by virtue of section 90 of the Decedent Estate Law unless the inheritance came to the intestate by descent, devise or gift from an ancestor, in which case all those not of the blood of the ancestor are excluded.

The owner of certain real property devised the same to his daughter who died intestate seized of the premises and survived only by her husband. No child was ever born to her and she was not survived by either father, mother, brother, sister or descendants of them of the whole blood. After her father's death her mother remarried and had children, and though at the time of the death of said daughter her half-brothers and sisters were not living, they had left descendants. Said daughter was also survived by the children of the deceased sister of her father. In an action to determine the claim of her husband to the property, claiming under deeds from his deceased wife's cousins, the defendants, who are the nieces and nephews of the half-blood of plaintiff's deceased wife, claim title as her heirs. *Held,* that defendants not being of the blood of the ancestor were not entitled to take, and that plaintiff was entitled to a summary judgment under rule 112 of the Rules of Civil Practice, although he had not noticed a motion therefor.

ACTION to compel the determination of a claim to real property under sections 500 to 512 of the Real Property Law, formerly

sections 1638 to 1650 of the Code of Civil Procedure. The answer pleads by way of counterclaim an action for partition.

*Clarence A. Spear,* for plaintiff.

*Berlin & Berlin,* for defendants.

CROPSEY, J. Though the answer denies the material allegations of the complaint, and the reply the material allegations of the counterclaim, it is conceded there is no dispute in the facts. The question is solely one of law. Defendants move for a judgment under rule 113 for the relief demanded in their answer, namely, that the complaint be dismissed and the defendants be adjudged the owners of the property, and upon their counterclaim. The plaintiff although not having given any notice of motion seeks a decision in his favor under rule 112. Summary judgment may be given although a counterclaim be interposed. *Chelsea Exchange Bank* v. *Munoz,* 202 App. Div. 702. And I see no reason why such a judgment may not be given upon a counterclaim in a proper case. Nor should relief be denied under rule 113 because the only question involved is one of law. *Coutts* v. *Kraft & Bros. Co.,* 119 Misc. Rep. 260. Moreover, both sides submit the legal question involved for decision in this manner. There is no reason why it should not be decided now, thus avoiding delay.

The question is as to the right to inherit under the Statute of Descent. In 1902 the property in question was owned by Joseph Short, Jr. By his will it was devised to his daughter Stella. Stella married Louis O. Rotenbach, the plaintiff in this action. In 1918 Stella Rotenbach died intestate seized of the premises, leaving no descendant nor had any child ever been born to her, and she was not survived by either father or mother, or brother or sister or descendants of them of the whole blood. After her father's death her mother had remarried and had children who thus became the half-brothers and sister of Stella Rotenbach. At the time of the latter's death her half-brothers and sister were not alive but had left descendants who were her nieces and nephews of the half-blood. Stella Rotenbach also left cousins. They were children of the deceased sister of Joseph Short, Jr., the father of Stella. The plaintiff claims title under deeds from these cousins of Stella. The defendants, who are the nieces and nephews of the half-blood of Stella, claim title as her heirs.

The sole question is, did the cousins of the Short blood take to the exclusion of the nieces and nephews of the half-blood who were not of the Short blood? Were there no question of half-blood and ancestral estate involved it is conceded the nieces and nephews would take to the exclusion of the cousins. *Matter of Butterfield,*

211 N. Y. 395. Does the fact that the nieces and nephews are of the half-blood of the deceased and not of the blood of the deceased's ancestor, from whom the property came, require a different decision? Section 90 of the Decedent Estate Law reads as follows: " *Relatives of the half-blood.* Relatives of the half-blood and their descendants, shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance came to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance." The determination of the question presented depends upon the interpretation and construction of this section and others of the Decedent Estate Law and of their forerunners.

At common law collaterals of the half-blood were excluded from inheritance in real property. The sixth canon of descent provided: " That the collateral heir of the person last seized must be his next collateral kinsman of the whole blood." 2 Black Comm. 224. Prior to the independence of the crown the common law of England regulated descents in this state. Fowler's Decedent Estate Law, 350. And to this day in cases not provided for by statute the common law still controls the inheritance or succession. Decedent Estate Law, § 92; *Hunt* v. *Kingston,* 3 Misc. Rep. 309. It follows from the foregoing that in this state collaterals of the half-blood inherit only in so far as that has been prescribed by statute.

The first act regulating descents in New York was passed in 1782. It is chapter 2 of the Laws of 1782. This statute after providing for the inheritance of descendants continued: " In case the said person so seized shall die without lawful issue leaving brothers, or leaving a brother or brothers, and a sister or sisters of the whole blood, the inheritance shall descend to such brothers or to such brother or brothers and sister, or sisters as the case may be, as tenants in common, in equal parts." And it further provided that if any such brother or sister shall have died leaving issue the issue shall inherit. This was as far as that statute went and it expressly provided that " in all cases of descent not particularly provided for by this act the common law shall govern." Under the provisions of this statute it is plain that relatives of the half-blood would not inherit.

The foregoing act was repealed as to subsequent descents by a new act passed in 1786. This is chapter 12 of the Laws of 1786. After providing that descendants should inherit, it enacted:

" *Thirdly,* In case the said person so seized shall die without lawful issue, leaving a father, then the inheritance shall go to the father of the said person so seized in fee-simple, unless the

said inheritance came to the person so seized from the part of his or her mother, in which case it shall descend as if such person so seized had survived his or her father.

"*Fourthly*, In case the said person so seized, shall after the death of his or her father, die without lawful issue leaving a brother or sister, or leaving a brother or brothers and a sister or sisters, the inheritance shall descend to such brothers or sisters, or to such brother or brothers and sister or sisters, as the case may be as tenants in common, in equal parts. And in such case every brother and sister of the half blood, of the said person so seized, shall inherit equally with those of the whole blood; unless where such inheritance came to the said person so seized, by descent, devise, or gift of some one of his or her ancestors; in which case, all those who are not of the blood of such ancestor shall be excluded from such inheritance."

It further provided that the issue of any deceased brother or sister should take the latter's share. This was all that the statute provided as to descent and it again expressly stated that in all cases not provided for the common law should govern. This statute for the first time changed the common-law rule so as to admit brothers and sisters of the half-blood and their children into collateral succession. But it limited such right where the inheritance came from an ancestor whose blood was not in the relatives of the half-blood.

This seems to have continued to be the law until the Revised Statutes were enacted. The only reference in them to relatives of the half-blood is in section 15. 1 R. S. 753; R. S. pt. II, chap. II, § 15. That reads: " Relatives of the half blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood; unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors; in which case, all those who are not of the blood of such ancestor, shall be excluded from such inheritance." The note of the original revise to this section says: " This section adopts the principle of the present law in reference to the kindred of the half blood, and extends that principle to the new cases introduced." See Fowler's Decedent Estate Law (Appendix II), 554.

When this provision of the Revised Statutes was repealed and embodied in the Real Property Law of 1896 slight changes in verbiage were made, and it became section 290. The revisers' note to that section states it is section 15 of the Revised Statutes " unchanged in substance." See Fowler's Decedent Estate Law (Appendix III), 564. This section 290 is word for word the same

as our present section 90 of the Decedent Estate Law which has already been quoted. It will be noted that from the time of the Revised Statutes down there has been no change in substance in this provision relating to the right of half-bloods to inherit.

Thus it is apparent that from the time the half-bloods were first permitted by statute to inherit that right has always been restricted. And that restriction has related to cases in which the property came to the deceased from an ancestor to whom the half-bloods were not related by blood. The range of collaterals has been extended and the disability restricted, but the principle underlying the statutory provisions remains the same.

The meaning of section 90 and its forerunners seems plain. And but for one or two cases in this state and some in other states it would not be necessary to discuss it at such length. In considering its meaning the fundamental proposition that collaterals of the half-blood did not inherit at common law and inherit under our statute only in so far as that right has been expressly given must not be lost to sight. In other words, the half-blood can inherit only by virtue of section 90. If they do not come within that section they are excluded. No other section gives them any right. When the first act was passed giving the half-bloods some right of inheritance (Laws of 1786, chap. 12), it was confined to brothers and sisters and their children, and the same provision in substance was made as is now in the statute where the property was an ancestral estate. That it was intended where the property came from an ancestor and the half-bloods were not of his blood they should be excluded, is emphasized by another provision of the same statute. This latter provision is that in any case where there is no issue of the intestate the inheritance shall go to the father unless it came to the intestate from the part of his mother, " in which case it shall descend as if such person so seized had survived his or her father." All the provisions of this statute indicate that the legislature intended that property that came from an ancestor should descend to those who were of the ancestor's blood even though they were not the nearest heirs and so would not have taken had the property not come from the ancestor.

And the same general policy has continued in the statutes ever since. This is made manifest by numerous provisions in the Decedent Estate Law. It provides that the descent of real property shall be (1) to lineal descendants; (2) to father; (3) to mother, and (4) to collateral relatives, as prescribed (§ 81). Sections 82 and 83 apply to descendants. They do not contain any special provision for descent in the case of an ancestral estate, because all descendants of the intestate must be of the blood of the ancestor.

Section 84 provides that if there be no descendants the father shall inherit, " unless the inheritance came to the intestate on the part of his mother; " then if she be dead the inheritance shall go to the father only for life, and the reversion to the brothers and sisters of the intestate and their descendants, or if there be none, then the father shall take in fee. Section 85 carries the inheritance to the mother and a brother or sister or their descendants, where there are no descendants of the intestate and no father or a father who is not entitled to take under section 84, the mother taking for life with the reversion to the brothers and sisters and their descendants, and if there be no brother or sister or descendant thereof the mother takes in fee. Section 87 deals with certain collaterals, namely, brothers and sisters and their descendants. No special provision is made in that section for the descent of property coming from an ancestor, because that section applies only to relatives of the whole blood (*Wheeler* v. *Clutterbuck*, 52 N. Y. 67; *Valentine* v. *Wetherill*, 31 Barb. 655), and hence all those who take under it must be of the blood of the ancestor. Section 88 covers the taking by collaterals if there be no heir entitled to take under any of the preceding sections. It provides that if the inheritance came to the intestate on the part of his father it shall descend to the brothers and sisters of the father and their descendants (subds. 1, 2, 3); and if there be none then to the brothers and sisters of the mother of the intestate and their descendants. Subd. 4. But if the inheritance came to the intestate on the part of his mother it shall descend to her brothers and sisters and their descendants; and if there be none to the brothers and sisters of the father and their descendants. Subd. 4. If the inheritance has not come to the intestate on the part of either father or mother it shall descend to the brothers and sisters both of the father and mother and their descendants. Subd. 4. If there be no brothers or sisters of the father or mother, nor any descendants of them, the inheritance, if it came on the part of the father, shall descend to the latter's parents, then living, in equal parts, and if they be dead to the mother's parents, then living, in equal parts; but if the inheritance came from the mother it shall go to her parents in a similar manner, and if they be dead to the father's parents; or if the inheritance has not come on the part of either father or mother it shall descend to the living grandparents of the intestate in equal parts. Subd. 5.

All of these provisions show it was the intention of the legislature to keep the inheritance within the blood of the ancestor. And this result is accomplished even though nearer relatives of the intestate who are not of such blood are thereby excluded. I think

the language of section 90, even unrelated to the other sections, calls for such a result. And when taken in conjunction with that of the other sections it seems to show conclusively that it was the intention of the legislature to exclude the half-blood when the inheritance came from an ancestor and they were not of the latter's blood. But even if the construction to be placed upon the section were doubtful that one should be given which would favor the line of the ancestral blood. *Knowlton* v. *Atkins,* 134 N. Y. 313, 321, and cases cited. Being " of the blood " does not necessarily mean that the person has the same quantity of blood but simply some of the blood of the ancestor. *Beebee* v. *Griffing,* 14 N. Y. 235; *Cornell* v. *Child,* 170 App. Div. 240; affd., 224 N. Y. 634.

That relatives of the half-blood, no matter what their degree of relationship may be, are excluded from taking where the inheritance came from an ancestor of whose blood they are not, is the construction that has been placed upon section 90 by Mr. Fowler in his excellent work on Decedent Estate Law. See pp. 405, 406. That also is the construction given to it in many and in fact in all the older cases in this state which have come to my notice. *Valentine* v. *Wetherill, supra; Conkling* v. *Brown,* 57 Barb. 265; and see, also, opinion of William Inglis and Charles O'Conor, appended in note to that case; *Wheeler* v. *Clutterbuck, supra; Matter of Wadsworth,* 58 Misc. Rep. 489; *Adams* v. *Smith,* 20 Abb. N. C. 60; *Adams* v. *Anderson,* 23 Misc. Rep. 705; *Matter of Reeve,* 38 id. 409. And see, also, *Matter of Simpson's Estate,* 144 N. Y. Supp. 1099, 1101.

The only cases in this state which are known to hold or even to suggest a contrary ruling are *Farmers Loan & Trust Co.* v. *Polk,* 166 App. Div. 43, 50, 51, and *Matter of Mack,* 179 id. 298. The point was not decided in the *Farmers Loan & Trust Company* case, the court stating that as it was unnecessary for it to decide the question they refrained from expressing any opinion upon it. The opinion does state that no authoritative decision upon the question in this state has been found. That there are such authorities has already been pointed out and in fact one of them (*Wheeler* v. *Clutterbuck, supra*) was cited in that opinion but on another point, and some of the other cases above mentioned were contained in the briefs submitted to the Appellate Division therein.

The construction of section 90 was involved in the decision of *Matter of Mack.* In the opinion in that case reference is made to the *Farmers Loan & Trust Company* case, and the writer of the opinion says that he is not aware that the precise question involved " has ever been passed upon by any appellate court in

18

this state." Evidently the cases that have already been cited herein, one being in the Court of Appeals and several in the General Term of the Supreme Court, were not brought to the attention of the Appellate Division when that case was decided by it. In that decision it is held that a sister of the half-blood is a sister within the meaning of section 87 of the Decedent Estate Law. This holding seems to overlook the fact that the half-blood are excluded from inheriting at the common law and take only in so far as statutory enactment has permitted them, and that section 87 does not mention or refer to relatives of the half-blood. It is only by virtue of section 90 that the half-bloods inherit at all. And because the cases were not called to its attention the Appellate Division apparently has also overlooked the fact that these sections or their forerunners had been construed in the manner just indicated. *Wheeler* v. *Clutterbuck, supra; Valentine* v. *Wetherill, supra.*

In *Matter of Mack* it is further held that the portion of section 90 relating to ancestral estates which excludes relatives not of the blood of the ancestor " applies only in the case of such a sister where there is another relative of the blood of the ancestor related in the same degree to the intestate as the sister." But the court adds (p. 300): " We do not decide that the rule here applied extends to every class of relatives however remote the relationship to the intestate may be. We confine our decision to the precise question here involved; further we need not go." In that case the property had come to the intestate from her mother. The intestate left a sister of the half-blood who was not of the blood of the ancestor, and a daughter of a sister of her deceased mother, who thus was a cousin of the intestate and of the blood of the ancestor. Under the statement last quoted from the opinion that case would not be an authority for the facts of the present case, for here there is no relative as close as a sister. But if the decision is sound I think it must necessarily be applicable to the facts of this case, and that the remoteness of the relationship of all concerned can make no difference.

Not being advised that the courts of this state had repeatedly construed this section in a uniform manner, and having its attention called to decisions in other states which had construed more or less similar provisions in a different way, the Appellate Division in *Matter of Mack* evidently adopted the rule laid down in those cases. And there are authorities in several states more or less at variance with those in ours. *Ryan* v. *Andrews,* 21 Mich. 229; *Rowley* v. *Stray,* 32 id. 70; *Robertson* v. *Burrell,* 40 Ind. 328; *Pond* v. *Irwin,* 113 id. 243; *Estate of Kirkendall,* 43 Wis. 167; *Estate of Smith,* 131 Cal. 433. In *Ryan* v. *Andrews* the rights of the half-blood

were not directly involved. In *Rowley* v. *Stray*, Judge Cooley, writing, said (p. 76): " We have examined the several New York, New Jersey, Rhode Island, Pennsylvania and Indiana cases, cited on behalf of the defendants, and find nothing in them to qualify the views here expressed. They are not very directly in point and are all decided under statutes quite different from that of this state." One of the New York cases referred to and which was cited to that court was *Wheeler* v. *Clutterbuck*, *supra*. That case does not place the same construction upon section 90 as Judge Cooley places upon the language of the Michigan statute which seems to be somewhat similar, but as he says their statute is quite different from ours that may account for the different conclusion reached. Furthermore, Judge Cooley says that the decision of his court is in line with the general policy of that state to put the half-blood on an equality of footing with the whole blood in the law of descents. That has not been the policy under the statutes of our state. It is apparently in view of these considerations that the result reached by Judge Cooley was that (p. 77) " the half blood are only excluded when there are others in the same statutory class who are to be preferred by reason of being of the blood of the ancestor from whom the estate came to the intestate." In other words, under Judge Cooley's construction, if there were sisters of both the whole and half-blood and the latter were not of the blood of the ancestor, the sisters of the whole blood would take to the exclusion of those of the half-blood. But if there were sisters of the half-blood, although they were not of the blood of the ancestor, and uncles and aunts who were of the blood of the ancestor, the former would take to the exclusion of the latter. Another reason upon which Judge Cooley reached his opinion seems to have been his holding that under one of the other sections of their statute, which provided when brothers and sisters should take, the half-blood were included although not mentioned (p. 75). This, as has already been pointed out, is at variance with the construction in our state.

The statute in Indiana is essentially different from ours and hence the cases cited from that state are not in point. In *Estate of Kirkendall* everything that was stated on the point now under discussion was *obiter*, the court merely deciding that the provisions of the statute as to descent did not apply to the transfer of personal property which was all that was involved in that case. In one of the opinions rendered the matter was discussed and a construction given to the language which would be favorable to defendants' contention here. But in that case no question of the half-blood was involved. The point was whether a paternal grandmother could take personal property to the exclusion of uncles

who were brothers of the intestate's deceased mother, the personal property having come from that mother. It was held she did. And this ruling apparently was made because the grandmother was the nearest relative and the property being personal property the provisions of the statute in question relating to descent did not apply.

In *Estate of Smith, supra,* personal property only was involved, but the opinion states that under the laws of California the same rule is applicable to personal property as to realty. The opinion states: (p. 435): "The provision [that excluding those not of the blood of the ancestor] has no application as between kindred in different degrees," following the language of the Michigan and Wisconsin decisions. But the court further held that the use of the words "brothers and sisters" in another section of the statute included those of the half-blood although they were not expressly mentioned. Our courts hold otherwise.

It may be that all the decisions of the foreign states cannot be satisfactorily distinguished, but even if that be so I think the intention of the legislature was plain and the meaning of our statute is clear. I cannot accept either the reasoning or the result of the other cases. Under our law the half-blood are permitted to inherit only by virtue of section 90. And by that very section they may not take an ancestral estate or share in it unless they are of the blood of the ancestor.

But were I less satisfied that this was the proper construction to be given to the section I certainly would be loath at this late day to place a different construction upon it. The construction stated is the one that has been given to the section by the highest court of this state and other courts thereof and thus it has become a fixed rule of property. After it has thus been in force and effect unchallenged for nearly a century to now change the ruling would work a grave injustice and would impair many titles.

In these days when a memorandum upon the law that is worthy of the name is quite a rarity, I must acknowledge my appreciation of the most excellent brief submitted in this matter by plaintiff's attorney.

The defendants are not entitled to take, because they are not of the blood of the ancestor. The plaintiff has the title of those who were of the blood of the ancestor and hence there should be judgment in his favor.

Judgment accordingly.