[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 237 
There was no evidence that any of the parties, plaintiffs or defendants, were in actual possession of the premises, nor that any other person was in possession. Thus there was no evidence of any adverse possession; and as the case admitted that the first purchaser, and each of his children, died seized in fact, the law, on their death, cast the seizin on and implied the actual possession in those to whom the title descended. If the appellant, Griffing, entered and took possession (as he did not show that he entered adversely), it must have been for the benefit of those who, in law, were cotenants with him. They therefore were in possession in fact, and could sustain an action for partition.
The next of kin to the person last seized were the sisters, of the whole blood, of his father, and a descendant *Page 239 
of a deceased sister of the father, and the brother and sisters, of the half blood, of the father; and the question is, whether the whole blood shall in such case inherit to the exclusion of the half blood.
The relatives of the half blood claim under § 10 of the chapter of descents (1 R.S., 752), which provides that if there be no heir entitled to take, under the preceding sections of that chapter, the inheritance (if it came to the intestate on the part of the father, as this did by descent) shall descend to the brothers and sisters of the father of the intestate, in equal shares, if all be living; and if any be living, and any be dead leaving issue, then to the living brothers and sisters, and to the descendants of those who have died; and that in all cases the inheritance shall descend in the same manner as if all such brothers and sisters had been the brothers and sisters of the intestate. (1 R.S., 752.) One of these rules is, that where there are brothers or sisters, and issue of a deceased brother or sister, each brother or sister takes the same share as if the deceased brother or sister were living, and the issue of the deceased takes the parent's share. (1 R.S., § 8.) Another of these rules is, that relatives of the half blood shall inherit equally with those of the whole blood in the same degree, and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance. (1 R.S.,
753, § 15.) The express provision of the 9th section is, that when the inheritance comes to the intestate on the part of the father, and descends to brothers or sisters or their descendants, it shall in all cases descend in the same manner as if all such brothers and sisters had been the brothers and sisters of the intestate. This broad language was used with care, and was intended to be as operative as it is broad. Then these relatives of the half *Page 240 
blood and those of the whole blood would each derive title from the person last seized, as if they were his brothers and sisters and he had derived his title from his father, who would stand, for the purposes of the inheritance, as if he were the father of all of them, although by different venters; then, although the inheritance came to the intestate by descent from his ancestor (his father), there are none who are not of his whole blood.
Mrs. Beebee and Mrs. Griffing, representing the two classes, would inherit as if they were sisters of Alfred, the son of Bradley Wiggins, the first purchaser; and if sisters of his, it must be as descendants of his father, who would be the common ancestor.
If that provision was not intended to have this effect, then the question is, what is meant by the words "the blood;" is it the whole blood, or the blood, whether the whole or half? These words occur in the 15th section, allowing the half blood to inherit the same as the whole blood, "unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance." The appellants contend that "the blood" necessarily means the whole blood.
In that section "the half blood" is once used, and "the whole blood" is twice used, showing that the revisors had in their mind what they deemed the most appropriate terms to express the two ideas, and that when they meant to speak of the whole blood they did not trust to any supposed technical meaning that the words "the blood" might have acquired when the feudal system of descents still prevailed, but they selected the popular and ordinary language, which could not admit of any doubt. They cannot be supposed at the close of so short a sentence to have abandoned this clear and cautious language, and to have used, in the sense of "the whole," words which, in their popular and ordinary *Page 241 
sense, would include both those of the whole and of the half. If one individual can be said to be of the half blood of his brother, and another to be of the whole blood to him, they both can with propriety be said to be of the blood of him; the term "of the blood" does not indicate the quantity, but simply that there is some of that blood, whether the whole or the half, or a smaller portion. This last is one reason why a phrase was used broader even than the expression, "whether of the whole or of the half blood." Brothers and sisters alone can be said to be of the half blood to each other; their descendants, being one degree further removed, cannot be said to be of the half blood to each other, but the two classes are properly described, as in this section, the one as "relatives of the half blood," and the other as "descendants of such relatives."
In a treatise on descent by the common law, where the rule is imperative to exclude the half blood, and to allow the estate to escheat rather than to admit them to the inheritance (2 Bl.Com., 227), the briefer expression, "the blood," might be used to denote those of the whole blood only, because the general rule excluding the half blood would be assumed to be properly understood. But in a statute adopting new rules of descent materially changing the common law, and expressly intended to admit the half blood on a par with the whole, except in a single case, no such inference could be drawn, and especially where the statute used the full expression, "the whole blood" twice in the same sentence, when the whole was meant, and distinguished between the two classes, and treated each as having a portion of the blood of another.
Our laws of descent, as passed in 1786, and in force until 1830, used a different mode of expression, and may possibly admit of a different interpretation; they provided for none of the half blood, except the brothers and sisters of the person last seized; and, as to them, allowed them to inherit `unless the inheritance came to the person last seized by *Page 242 
descent, demise, or gift of some one of his or her ancestors, in which case all those who were not of the blood of such ancestor were to be excluded from the inheritance." "The blood" might possibly here have meant the whole blood, because it was used in contrast with "half blood," and the term "whole blood" had not occurred in the statute before.
The spirit and intent of the act were shown by its previous provisions; if the intestate leave no father or mother, and no issue, and no brothers or sisters, the inheritance descends to the brothers and sisters of the father and their descendants, if it came on the part of the father, and only to the mother's relatives if these relatives on the part of the father fail. If the inheritance came on the part of the mother, it descends to the like relatives on her side, and only on failure of those to the relatives of the father. Thus, in a liberal spirit, it allows those who may have none of the blood of the first purchaser, to inherit, because they are related to the one last seized, and is satisfied with giving, and does give, the preference to that branch, whether male or female, through which the inheritance was derived to the one last seized. The exclusion in the statute would have taken effect if the estate had come on the part of Mercy, and then the children of Penelope would have been excluded; or if it had come on the part of Penelope, then the children of Mercy would have been excluded.
Many cases were referred to in an able and elaborate argument by the counsel for the appellants; it is not necessary to notice them all. Cresoe v. Laidley (2 Binney, 279) merely decided that the heir at common law must take when the statute of descent did not apply, and that the section in the statute providing for the distribution of estates, when the intestate left no mother or brother or sister of the whole blood, did not apply when he left a mother and a brother of the half blood who could not inherit. It in effect decided that when the estate passed from father to son, and the mother then married and had *Page 243 
issue, such issue could not take, as not being of the blood of the ancestor from whom the estate came. Collins v. Gardner (2Peters' U.S.R., 58,) was under a statute of Rhode Island. Collins devised to his daughter, Mary Gardner, in fee; she died, leaving three children, each of whom took from her one-third by inheritance; these all died intestate and without issue; the last was Mary C. Gardner. She left an uncle and aunt of the whole blood, and a brother born of another mother, but of the same father. It was admitted that the one-third, which came to Mary C. from her mother by inheritance, passed to those only who were of the blood of her mother, so the brother who had no blood of the mother was excluded as to that; but it was unanimously held that the two-thirds, which came to Mary C. by descent from her brothers, passed to her half brother, who was the half blood to them and to her, though not of the blood of the ancestor who first had title to the land, as she took it, not through her mother, but by immediate descent from her brothers, and they took it by devise, and so, in the common law sense, as purchasers.
The court declared that they all thought "that the words `of the blood' comprehend all persons of the blood, whether of the whole or half blood," and that the words, "come by descent, gift, or devise from the parent or other kindred," mean immediate descent, gift or devise, and make the immediate ancestor, donor or devisor the sole stock of descent.
This decision was made in January, 1829, and, although the Revised Statutes were passed at that time, yet they had not then taken effect. As early as April, 1830, they were amended in many respects (Laws 1830, ch. 320, and other chapters); and, among other things, the law of descent was altered in part (Laws 1830, 387), but no alteration was made in the phraseology of the section now under consideration, although the decision in the United States court must have been known to the revisors and to the legislature. It is fair *Page 244 
to infer that both intended that the words should have the meaning given to them by a court of so great influence.
Shippen v. Izard (1 Serg. Rawle, 222) decides that "estate coming from the part of the father" means one that came from his side, as distinguished from the mother's side, and so included an estate coming from the father's father, and differed from the words "coming from the father" merely. Bevan v.Taylor (7 Serg. Rawle, 397) is to the same effect, although many other propositions are discussed in a very elaborate argument, and, among them, one relied on by the counsel for the appellants, that the court is not to extend the statute of descents to cases supposed to be within its spirit, if the legislature has not provided for them. The spirit of a law may be referred to in order to interpret words admitting of two meanings, but not to extend a law to a case not within its fair meaning. Den ex dem Delaplaine v. Jones (3 Hals. N.J.R.,
340) holds, that when lands come to the intestate by descent, devise, or gift of one of his ancestors, his brothers and sisters of the half blood, who are of the blood of the ancestor, may inherit; but brothers and sisters of the half blood, who are not of the blood of the ancestor, cannot inherit. The statute allowed brothers and sisters of the half blood to inherit, provided that if the estate came to the intestate by descent, devise, or gift of some one of his or her ancestors, all those who were not of "the blood" of such ancestor should be excluded; it also held that this statute made the person last seized, and not the ancestor, the propositus; that they are of the blood of the ancestor who are descended from him, or from the same couple of common ancestors, or who are capable of taking by descent from him. In Arnold v. Den ex dem Phœnix (2 South. N.J.R., 862), the court of appeals of New Jersey held that when lands came to one by gift from her father, her brothers and sisters of the half blood, by her mother's side, could inherit with the sister of the half blood on her father's side, reversing a decision of their supreme court. Baker v. *Page 245 Chalfant (5 Whart. Pa. R., 477), decided in 1840, held that "blood," used in the statute of descents, included the half blood, and approved of the decision, in that respect, inGardner v. Collins (2 Peters, 77), and in Den v. Jones
(2 Hals., 340).
These decisions concur with the popular sense of the words used, and are an additional argument in favor of the adoption of this meaning. The judgment should be affirmed with costs.
All the judges concurred.
Judgment accordingly. *Page 246 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 247