Miller *v.* Speer.

For reversal—The Chief-Justice, Depue, Dixon, Magie, Parker, Scudder, Cole, Paterson—8.

---

Abraham Miller, Margaret Blowers and Lydia Tim-brook, appellants,

*v.*

Garret Speer, John H. Speer and Sarah C. Vander-hoof, respondents.

In cases depending on the sixth section of the "Act directing the descent of real estates (*Rev. p. 297*), where the lands have come to the person dying seized by descent, devise or gift of some ancestor, those who stand in the nearest degree of consanguinity to the person so seized shall inherit, if they are of the blood of such ancestor, although they may not stand nearest, *in virtue of the blood of such ancestor*, to the person last seized.

---

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Speer* v. *Miller, 10 Stew. Eq. 492.*

Mr. *J. S. Salmon* and Mr. *Theodore Little,* for appellants.

I. The decision of the vice-chancellor can only be sustained by disregarding one of the fundamental rules of statutory construction, to wit, that if the words of a statute are plain and unambiguous, they are to be expounded according to their natural and popular meaning, and such meaning is not to be disregarded unless it involves some absurdity, or is clearly inconsistent with other parts of the statute. *Potter's Dwar. on Stats. (ed. of 1878) 193–208; Sedgw. on Stat. & Const. Law 253; Gibbons* v. *Ogden, 3 Hal. 295; State* v. *Engle, 1 Zab. 351; Den* v. *Demarest, 4 Zab. 431; Lane* v. *Schomp, 5 C. E. Gr. 86; Calame* v. *Calame, 10 C. E. Gr. 532, 551; Rudderow* v. *State, 2 Vr. 515.* To the same purport will be found *Schenck* v. *Vail, 9 C. E. Gr. 544; Douglas* v. *Board of Chosen Freeholders, 9*

*Vr. 215; Water Commissioners* v. *Brewster, 13 Vr. 129; Wellman* v. *Bergman, 15 Vr. 616; United States* v. *Fisher, 2 Cranch 399.*

I will only call attention to the fact that in *Den* v. *Urison, Penn. 212,* the supreme court did with the third section of the act of 1780 precisely what the vice-chancellor has done in this case. They disregarded the plain words of the act which gave the estate to the half-blood relatives generally, and, that the law might be brought into accord with common law rules, declared the legislature must have meant *half-blood on the part of the ancestor from whom the estate descended.*

But when the same question came before the court of errors, in *Den* v. *Arnold, 2 South. 862,* that court overruled the case of *Den* v. *Urison,* and held that the words of that section were to be construed *according to their literal and natural meaning.*

That decision was followed in *Den* v. *McKnight, 6 Hal. 390.*

II. The construction given by the vice-chancellor to the words " of the blood of such ancestor," is not only contrary to their natural and popular meaning; it is equally opposed to their well-settled legal meaning. *Gardner* v. *Collins, 2 Pet. 58; Beebe* v. *Griffin, 14 N. Y. 241; Wheeler* v. *Clutterbuk, 52 N. Y. 68; Hart's Appeal, 8 Pa. St. 32.*

Having thus seen how the words " of the blood of such ancestor " have been construed by the courts of New York and Pennsylvania, and also by the supreme court of the United States, I ask the special attention of the court in the case of *Den* v. *Jones and Searing,* reported in *3 Hal. 340.*

I have found one English case, that of *Hawkins* v. *Shewers, 1 Sim. & S. 259,* in which the vice-chancellor, Sir John Leach, decided that the nearest collateral heir upon whom the inheritance was cast must be the nearest heir on the part of the ancestor from whom it came; that he must inherit through such ancestor.

I do not understand that to be the rule in this state, or to be in accord with the law under consideration, which gives the estate to the next collateral heir of the person last seized.

No authority was cited by the vice-chancellor, and he rendered his decision by disregarding the plain language of Lord Hale (*2 Hale's C. L. 122*), where he says : " It is not necessary that he that inherits be always heir to the purchaser, but it is sufficient if he be of his blood and heir to him that was last seized." In other words, he says Lord Chief-Justice Hale did not mean what he said.

That case was decided about ten years before the decision in *Den* v. *Jones and Searing*, *3 Hal. 340*, and has, as I have shown, not been followed by either the United States supreme court or the courts of the states.

III. There is another clause of this sixth section which it may be necessary to consider if we would understand its full scope, though whatever it may be construed to mean it cannot essentially affect the appellants' case.

Both the letter and the spirit of the statute require that, in the case contemplated, the estate shall descend to that class of persons who are " of equal degree of consanguinity to the person last seized."

The word " those " is a relative term, and it refers in this section to the " persons of equal degree of consanguinity to the person last seized," as Chief-Justice Ewing, in *Den* v. *Jones*, declared the same word in the fifth section to refer to the half-blood.

In that case the court held that two qualities were required to bring the claimants within the proviso of the fifth section, which is almost identical with the proviso of this sixth section. They must be both " of the half-blood of him who died seized and of the blood of the ancestor."

Following that guide, I submit that, to bring any claimant for this estate within the proviso or excluding clause of the sixth section, he must possess three qualities :

1. He must be one of the nearest of the collateral kindred of Julia Badeau, the person last seized.

2. He must be " of the blood " of Henry Speer, the ancestor from whom the estate came.

3. He must be capable of inheriting the said lands.

Miller *v.* Speer.

*Mr. N. S. Kitchell*, for respondents.

The opinion of the court was delivered by

DIXON, J.

On May 7th, 1881, Julia A. Badeau died intestate, seized of
lands in this state, without leaving any kindred nearer to her
than the parties in this suit. The appellants are related to her
on both her father's and her mother's side, in the fifth degree
*ex parte paterna*, being the children of her father's mother's
brother, and in the third degree *ex parte materna*, being her
mother's brother and sisters. This dual connection springs from
the fact that her father and mother were cousins. The respond-
ents are related to the intestate on her father's side only, and in
the fourth degree, being the children of her father's brother.
The relationship is shown plainly on the annexed diagram :

Miller *v.* Speer.

The lands in question had come to the intestate by descent from her father.

On these facts, the inquiry is raised, Who now own the lands?

The title passes under the sixth section of the act directing the descent of real estates (*Rev. p. 297*), which enacts that—

"When any person shall die seized of any lands, without devising the same in due form of law, and without lawful issue, and without leaving a brother or sister of the whole blood or half blood, or the issue of any such brother or sister, and without leaving a father or mother, capable of inheriting, by this act, the said lands, and shall leave several persons, all of equal degree of consanguinity to the person so seized, the said lands shall then descend and go to the said several persons of equal degree of consanguinity to the person so seized, as tenants in common, in equal parts, however remote from the person so seized the common degree of consanguinity may be, unless where such inheritance came to the said person so seized by descent, devise or gift of some one of his or her ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance, if there be any person or persons in being, of the blood of such ancestors, capable of inheriting the said lands."

Upon this section, it was decided, in *Schenck* v. *Vail, 9 C. E. Gr. 538*, that the degrees of consanguinity were to be reckoned according to the civil law, that there was no right of representation, and that those nearer in degree to the intestate took the land, in exclusion of those more remote.

According to this decision, and disregarding, for the moment, the source whence the intestate derived the land, the appellants would evidently be entitled to the estate, for they stand in the third degree of consanguinity to the person dying seized, while the respondents stand in the fourth degree only.

Does, then, the fact that the intestate obtained her title by descent from her father, interfere with this devolution of the property? That depends upon the interpretation of the statutory clause, which says that all persons who are not *of the blood of the ancestor* from whom the estate came to the intestate, shall be excluded from the inheritance. Are the appellants of the blood of the intestate's father, within the meaning of this pro-

vision? If they are not, they are excluded; otherwise, they inherit.

To be of the blood of any person means to be able to trace descent from some progenitor of that person. This is the common acceptation of the phrase, apart from the theoretical notion which makes "of one blood all nations of men." It is also its legal sense, as the following cases indicate: *Gardner* v. *Collins, 2 Pet. 58,* where Justice Story says: "A person is, with the most strict propriety of language, affirmed to be of the blood of another, who has any, however small a portion, of the same blood, derived from a common ancestor;" *Beebee* v. *Griffin, 14 N. Y. 235; Hart's Appeal, 8 Pa. St. 32; Cutter* v. *Waddingham, 22 Mo. 206,* and *Delaplaine* v. *Jones, 3 Hal. 340.* Within this definition, the appellants are of the blood of the intestate's father; they and he are descended from Henry Miller, their common grandfather.

But the respondents insist that the section under review, taken altogether, signifies that, when lands have come to the intestate by descent, devise or gift from an ancestor, those persons shall inherit who are related to the intestate in the nearest degree of consanguinity, *by virtue of the blood of such ancestor,* and this construction was adopted in the court below.

This view is said to be commended by the principles of natural right, which should prefer the nearest in blood to the ancestor. But when the descent is to be cast among the more distant relatives provided for in this section, I think the claims of nature are but slight, and, in many instances, the increased value which the estate has received, in the hands of the person last seized, will entitle his nearer kindred, rather than his ancestors, to even these claims. There is nothing in such principles sufficiently decisive to disturb the simple exposition of the statute.

Turning, then, to this positive law, it may, in the first place, be remarked, with reference to the interpretation contended for by the respondents, that if such had been the intention of the legislature, it would probably have been expressed more clearly than it is in the present enactment. The phrase employed by the learned vice-chancellor, to indicate his idea of the meaning of the

law, that it casts the inheritance upon the person who stands near-
est, *in virtue of the blood of the ancestor*, to the person last seized, is
so apt, and, at the same time, so obvious, that the draftsman of
this important statute could scarcely have failed to use it, or some·
plainly equivalent words, if he had designed to embody that
thought.   On the contrary, the language of the act first points
out as the heirs those who, in virtue of any blood, are nearest in
consanguinity to the person dying seized, and then excludes these
persons only in case they are not of the blood of the ancestor
from whom the title came.   The blood of the ancestor merely·
marks the class in which the heirs are to be found, but the person
dying seized is the *propositus* whose nearest kindred in that class
are the heirs.   Such is the effect of the plain tenor of the
statute.

But, in the next place, the construction adopted below cannot be·
maintained without overruling *Delaplaine* v. *Jones, 3 Hal. 340.*
In that case, the lands in dispute had come to the intestate by
descent from her mother, and were claimed for the half-brother
and half-sisters of the intestate, children of her father, and not
of her mother, on the one side, and for the brother and sisters
of the intestate's mother, on the other side.   The title depended
upon the construction of the fifth section of the statute now
before us, which casts the inheritance, in certain cases, upon·
brothers or sisters of the half blood, with the proviso that if it
came to the person dying seized by descent, devise or gift of
some one of his or her ancestors, all those who are not *of the
blood of such ancestor* shall be excluded from such inheritance.
The kindred of the half blood insisted that they were *of the·*
*blood* of the intestate's mother, by the fact that she was their
mother's sister (their father having married two sisters), and
that, therefore, they were heirs of the intestate by virtue of
their half blood.   The uncle and aunts urged that the proviso
required ·the heritable· blood to be traced through the ancestor
from whom the estate descended, and that, by such blood, they
were related to the intestate in the third degree, while their oppo-
nents stood only in the fourth.   The court held with the former,
and decided that a half-brother or sister of the person dying,

Miller *v.* Speer.

seized may inherit an estate which has come to the intestate from an ancestor, provided he or she can trace any degree of consanguinity to such ancestor. This decision was rendered over half a century ago, and within a few years after the passage of the statute involved (*P. L. of 1817 p. 8*), and has remained as an undisputed rule of property ever since. It should not now be overturned. It applies directly to the case before us. There, as here, the law excluded from the inheritance those who were not of the blood of the ancestor from whom the estate had descended to the person dying seized; there, as here, the right to inherit was claimed through another than that ancestor, and there, as here, it was sought to exclude such right, not because the claimants were not literally of the blood of such ancestor, but because the relationship on which the claim rested was not derived through him. But the decision was that relationship to the person dying seized determines the inheritance, provided only the descent shall not be cast upon those who are not partakers of the blood of the ancestor from whom the estate came.

In accordance with this ancient authority, and also with the statute, as we read it, the appellants are entitled to the lands in controversy.

The decree below must therefore be reversed.

For affirmance—CLEMENT—1.

For reversal—THE CHIEF-JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, COLE, WHITAKER—11