FARMERS' LOAN & TRUST CO. v. POLK et al.    (No. 6770.)

(Supreme Court, Appellate Division, First Department.    February 5, 1915.)

1. TRUSTS (§ 271½*)—DEED OF TRUST—JUDICIAL CONSTRUCTION—RIGHT.

Where the trustee under two deeds of trust, one involving realty and the other personalty, and both providing that on expiration of the trust the trustee should apportion among those entitled thereto (the life tenant's "kindred" according to one deed, and "lawful kindred" according to the other) any income from either trust accruing during the period commencing before, but terminating after, the death of the life beneficiary in proportion to the time before and after his death during which it accrued, alleged that it held such income with respect to such trusts, and that it

---

could not decide to whom to pay over same, it was entitled to sue for a judicial construction of both deeds of trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 382; Dec. Dig. § 271½.*]

2. TRUSTS (§ 61*)—DEED OF TRUST—CONSTRUCTION.

Where two deeds of trust, one involving realty and the other personalty, gave the settlor's nephew the income of the property for life, with an unrestricted power to dispose of the corpus of the property by will, and provided that if he failed to exercise such power his "kindred," according to one deed, and "lawful kindred," according to the other, should be entitled to the distribution thereof according to their respective degrees of kinship, and where the life tenant died without exercising the power of appointment, the remainder, without action on the part of the trustee, became vested absolutely in those answering the descriptions of "kindred" and "lawful kindred," respectively.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 83–87; Dec. Dig. § 61.*]

3. DEEDS (§ 105*) — DEEDS OF TRUST — CONSTRUCTION — GRANTEES — LAWFUL KINDRED.

Where a deed of trust gave realty to the settlor's nephew for life, with remainder to his lawful kindred in case he failed to exercise the absolute power of appointment given him, the half-brother of the life tenant, who died without leaving other near kindred or a wife surviving, was entitled to remainder as against the settlor's children and grandchildren who survived the life tenant.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 278–291, 372–374; Dec. Dig. § 105.*]

4. DEEDS (§ 105*)—CONSTRUCTION—KINDRED.

Where a deed of trust gave personalty to a settlor's nephew for life, with remainder to his "kindred," and the life tenant died leaving no wife and no near kindred other than his half-brother, the half-brother, in view of Decedent Estate Law (Consol. Laws, c. 13) § 98, subd. 13, providing that relations of the half blood shall share equally with those of the whole blood in the same degree in the distribution of personalty, took the remainder of the personalty, to the exclusion of the settlor's children and grandchildren.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 278–291, 372–374; Dec. Dig. § 105.*]

5. DEEDS (§ 105*)—CONSTRUCTION—"KINDRED."

Where a deed of trust gives a life estate, with remainder to the life tenant's kindred, the word "kindred" will be given its strict and primary signification, and construed to mean next of kin, and not heirs at law.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 278–291, 372–374; Dec. Dig. § 105.*

For other definitions, see Words and Phrases, First and Second Series, Kindred.]

6. DESCENT AND DISTRIBUTION (§ 35*)—"HEIR AT LAW."

Under Decedent Estate Law, § 90, providing that relations of the half blood shall inherit equally with those of the whole blood in the same degree, a half-brother of a decedent was his "heir at law."

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 102–107; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, First and Second Series, Heirs at Law.]

Appeal from Special Term, New York County.

Action by the Farmers' Loan & Trust Company, as trustee, against Tasker Polk, individually, etc., with Maria C. M. De Florez and anoth-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er impleaded. From judgment for Polk, the parties impleaded appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

Henry A. Forster, of New York City (Arthur Sutherland, of New York City, on the brief), for appellants.

George Gordon Battle, of New York City (John Caldwell Myers, of New York City, on the brief), for respondents.

LAUGHLIN, J. This is a suit in equity, brought by a trustee for the construction of two deeds of trust, and for the judicial settlement of its accounts, and for a decree directing the distribution of the funds still held by it, consisting of personal property, the corpus of the trust fund, and of income from both personalty and realty.

[1] Israel Corse was the settlor of both trusts. One relates to personal property, and the other to realty. The former was created by an instrument in writing executed by him and the plaintiff on the 1st day of March, 1872, and the latter by a like instrument, in which the wife of the settlor joined, executed on the 20th day of April the same year. Both trusts were created for the benefit of James K. Polk, who was the son of the settlor's sister. Each deed of trust gave the nephew the income of the property for life, and also gave him an unrestricted power of appointment to dispose of the corpus by his last will and testament. The deed of trust of the personalty provided that, in the event of his failure to exercise the power of appointment, "then his next of kindred" should be entitled to the distribution thereof, "according to their respective relations or degrees of kindred"; and in such event, the other deed of trust provided as follows:

"Then all of the parties hereto do by these presents donate, alien, and convey unto the next of lawful kindred of said Polk, and said kindred shall thereupon become invested and entitled to the whole of the said described premises, and any and every benefit derived therefrom, not so disposed of by said Polk in his last will as aforesaid, as tenants in common per representation of lawful kindred."

It was therein further provided that, upon the death of Polk, the trust and "all right, title, and interest" of the trustee should "wholly cease and determine," and that such right, title, and interest—

"shall immediately invest by force and virtue of this instrument in manner or method or medium or form heretofore set forth unto the persons so selected by said Polk or unto his next of kindred as aforesaid."

Polk died on the 5th day of November, 1912, without, so far as appears, having exercised either power of appointment. The plaintiff alleges that it does not know whether Polk ever exercised either power of appointment, but that the defendant Tasker Polk, his half-brother, the issue of a subsequent marriage by his father to one not of the blood of the settlor of the trust, has been appointed the administrator of his estate on the theory that he died intestate. The plaintiff has attempted to make all parties, who may in any event be interested, parties defendant, and has had a guardian ad litem appointed for any unknown par-

ties who have not appeared, and a formal answer was interposed for them, submitting their interests, if any, to the protection of the court.

The deeds of trust provide, in effect, that at the expiration of the trust the trustee shall apportion among the personal representatives of the life beneficiary and those entitled to the respective remainders any income from either trust, accruing during a period commencing before, but terminating after, the death of the life beneficiary, in proportion to the time before and after his death during which it accrued. The plaintiff alleged and proved that it holds such income with respect to both trusts; and it also alleged that it could not with safety to itself decide to whom to pay over such income, and that a judicial construction of both deeds of trust is required for that purpose. I am of opinion that these facts entitle the trustee to maintain the action for a judicial construction of both deeds of trust.

[2] It is not necessary to decide whether, immediately upon the execution of the deeds of trust, the remainders by virtue thereof vested in the "kindred" and "lawful kindred," respectively, of the life beneficiary, subject to be divested by their death during his life, or by the due exercise of the power of appointment. It is sufficient to say that it is quite clear that, upon his death without his having exercised either power of appointment, the remainders, by virtue of the deeds of trust, and without action on the part of the trustee, became vested absolutely in those answering the description of his "kindred" and his "lawful kindred," respectively. With respect to the personalty, it is necessary for the protection of the trustee to have it authoritatively decided who are his "kindred," within the contemplation of the deed of trust. But it follows from what has been said that the trustee is not concerned with the title to the land, and the ownership of the title thereto is not directly presented for adjudication.

[3] The question of law on which ownership of the title depends is, however, involved in deciding who is entitled to that part of the income from the realty received and now held by the trustee for the period after the death of the life tenant. The settlor of the trust left children and grandchildren who survived the life tenant. The appellants are his grandchildren. The life tenant left no issue, widow, parent, or brother or sister of the whole or half blood, or descendant of either, excepting said Tasker Polk, his half-brother. The trial court held that Tasker Polk took both remainders. The appellants claim that both trust deeds should have been construed as giving the remainders to the children and grandchildren of the settlor, on the theory that they, being of the blood of the settlor, are the next of kin and heirs at law of the life beneficiary, within the contemplation of the deeds of trust.

The record does not disclose what provision, if any, the settlor made for the benefit of his children and grandchildren; but it is quite plain that in creating these trusts he manifested no solicitude for them, and not a word is to be found in either deed of trust to show that, in making these provisions for James K. Polk, he was actuated by any relationship of blood, even as to him, for there is no reference in either deed to their relationship. The settlor gave the life beneficiary absolute, unqualified power to appoint the remainders to whom he pleased, and

made no attempt to restrict the appointment to relations in any degree of either of them. If the property had been embraced in a single deed of trust, and the settlor had used the word "kindred" in transferring the remainder of the personalty, and the words "lawful kindred" in granting and conveying the realty, there would be ground for contending that some distinction was intended thereby; but when we consider that the words are not used in the same instrument, and that the two instruments were not executed at the same time, I think no significance is to be attached to the use of the word "lawful" in one and its omission from the other. Whoever drafted the later instrument merely attempted to make it perfectly clear that illegitimate kindred should not take.

[4] With respect to the personalty, it is perfectly clear, I think, that the settlor intended, in the event of the failure of the life beneficiary to exercise the power of appointment, that the remainder should go directly from himself and by virtue of the deed of trust, as an assignment and transfer thereof, either in the *strict* meaning of the word *"kindred,"* to those related to James K. Polk *by blood* who would answer the description of next of kin and heirs at law, *or,* in the broader sense, to those who would take as next of kin under our statute of distributions, if the statute included a husband or wife as next of kin; and since Tasker Polk would take under either construction, for the reason that James K. Polk left no widow, it is not material whether the word "kindred" was used in the strict or in the broader sense.

The settlor was domiciled here, and executed the deeds of trust here, and the property was all within this state. Whoever was to take either remainder, on the failure of the life beneficiary to exercise the powers of appointment, was to take, not through him, for he had no title or interest therein, but merely a power of appointment with respect thereto (Farmers' Loan & Trust Co. v. Shaw, 127 App. Div. 657, 107 N. Y. Supp. 337, 111 N. Y. Supp. 1118), but directly from the settlor under the deeds of trust, which, on the failure of the life beneficiary to exercise the powers of appointment, transferred and conveyed, respectively, the remainders to the "kindred" and "lawful kindred," respectively, of the life beneficiary, precisely as if the remaindermen had been named therein.

Subdivision 13 of section 98 of our Decedent Estate Law provides that relatives of the half blood shall share equally with those of the whole blood in the same degree in the distribution of personal property, and that their representatives shall take the same as representatives of the whole blood. In view of these provisions, there can be no question but that Tasker Polk took the remainder of the personalty. See Champlin v. Baldwin, 1 Paige, 562; Graham v. Whitridge, 99 Md. 248, 57 Atl. 609, 58 Atl. 36, 66 L. R. A. 408–419.

[5] I see no reason why the rule applicable to the construction of words used in a will should not obtain in the construction of a deed of trust, and, if so, the settlor is to be presumed to have used the word "kindred" in granting the remainder of the realty according to its strict and primary signification (Luce v. Dunham, 69 N. Y. 36), which is, not heirs at law, but next of kin (2 Blackstone's Commentaries [Sharswood's Ed.] 515; Bouvier's Law Dictionary; Standard Dictionary;

Swasey v. Jaques, 144 Mass. 145, 10 N. E. 758, 59 Am. Rep. 65; 21 Am. & Eng. Encyc. of Law [2d Ed.] 539; Slosson v. Lynch, 43 Barb. 147, cited approvingly in Tillman v. Davis, 95 N. Y. 26, 47 Am. Rep. 1; N. Y. Life Ins. & T. Co. v. Hoyt, 161 N. Y. 1, 55 N. E. 299; Hillhouse v. Chester, 3 Day [Conn.] 166, 3 Am. Dec. 265; Graham v. Whitridge, supra).

[6] If, however, owing to the fact that the property is realty, the contention of the appellants that by "lawful kindred" the settlor meant heirs at law should prevail, that would not avail them, for the half-brother was his heir at law under our statute with respect to the descent of real property. Sections 87 and 90, Decedent Estate Law. Said section 90 of the Decedent Estate Law provides as follows:

"Relatives of the half blood and their descendants shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance come to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

It is argued in behalf of the appellants that the word "ancestor," as used in this statute, is not confined to *lineal* ancestors, but may mean a *collateral* ancestor, including an uncle, and that it is conceded by the respondents and appears to be sustained by authority. Wheeler v. Clutterbuck, 52 N. Y. 67. I am of opinion, however, that those provisions of the statute have no bearing on the question presented for decision, because the remainder was never vested in James K. Polk, and was not inherited from him as intestate property, but came from the settlor of the trust, who conveyed it directly to the "lawful kindred" of his nephew, James K. Polk. In determining who answer the description of "kindred" and "lawful kindred" of James K. Polk, we look to our statutes, in the light of the facts, to see who would be *the kindred* of James K. Polk, or, in other words, to see who of *his kindred* would have been his next of kin and entitled to take *his personalty* on distribution, and his heirs at law and entitled to inherit *his realty,* for it is fairly to be inferred that they are the respective classes designated by the settlor as "kindred" and "lawful kindred." See Lawton v. Corlies, 127 N. Y. 101, 27 N. E. 847; Woodward v. James, 115 N. Y. 346, 22 N. E. 150; Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464; Keteltas v. Keteltas, 72 N. Y. 312, 28 Am. Rep. 155.

But we do not consider the statute on the *erroneous* assumption that the realty is to be inherited by the remainderman *from the life tenant,* and that it came to him from an ancestor, which would require us to consider whether the statute by which all not of the blood of the ancestor are excluded from inheriting is applicable. If the settlor intended to confine the remainder of the realty to those who would have taken, if *he* had given or devised it to James K. Polk, or if it had come to the latter by *descent* from him, some indication of such intention might reasonably be expected to be found in the deed of trust, but there is none. The words used in the deed of trust only indicate an intention that, if James K. Polk saw fit not to exercise the power of appointment, the remainder would go to whoever would have taken it if it were owned by the life tenant, without regard to how or from whom he acquired it.

The learned counsel for the respondents contend that the exception in the statute excluding relatives of the half blood should be confined to those cases in which there are, *in the same degree of relationship to the intestate,* relatives of the whole and half blood, some, but not all, of whom are of the blood of the ancestor, and not to exclude the relatives of the half blood altogether, for under such a construction the property would escheat to the state if there happened to be no relative of any degree of the blood of the ancestor, and argues in support thereof that it would be most unreasonable to hold that the Legislature intended that relatives of the half blood should participate equally with those of the whole blood with respect to all of the realty of an intestate which did not thus come to him from an ancestor, but that as to realty which came to him from an ancestor, the relatives of the half blood, not of the blood of the ancestor, could not inherit at all, even though there were no relative of the blood of the ancestor to inherit. The point is both interesting and important. We have not been referred by counsel to any authoritative decision on it, in our own jurisdiction, and we have found none; but it has arisen under similar statutes in other states, and the construction urged has quite generally, but not in all cases, been adopted. See Ryan v. Andrews, 21 Mich. 229; Rowley v. Stray, 32 Mich. 70; Estate of Smith, 131 Cal. 433, 63 Pac. 729, 82 Am. St. Rep. 358, and cases cited; Robertson v. Burrell, 40 Ind. 328; Pond v. Irwin, 113 Ind. 243, 15 N. E. 272. But see contra, Estate of Kirkendall, 43 Wis. 167. Since it is not necessary to decide the question, we refrain from expressing an opinion thereon.

The learned court, therefore, properly held that Tasker Polk took all of the personalty and all income received by the trustee from the realty, and is entitled to all moneys held for distribution under either trust.

It follows that the judgment should be affirmed, with costs. All concur.