(94 Misc. Rep. 7)

### In re MILLIMAN.

(Surrogate's Court, Herkimer County.    February, 1916.)

DESCENT AND DISTRIBUTION ⬉41—PERSONS ENTITLED—HALF-BLOOD COUSINS.

> Under Decedent Estate Law (Consol. Laws, c. 13) § 88, subd. 4, providing for descent to the brothers and sisters of the mother of intestate and to the descendants of such as shall have died, where none of the heirs previously mentioned survive testator, and section 90, providing that relatives of the half blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift from an ancestor, a decedent's maternal half-blood cousins inherit equally with the maternal whole-blood cousins.

> [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 116, 117; Dec. Dig. ⬉41.]

Application by Harriet L. Milliman for decree establishing a right of inheritance to lands whereof Daniel H. Eastman died seised. Decree entered.

S. H. Newberry, of Little Falls, for petitioner.
Walter A. Swan, of Rochester, for Louise Graham.

BELL, S.    Daniel H. Eastman died intestate November 13, 1914, seised and possessed of a farm situate in the town of Fairfield, this county, which descended to him from his father. He left no widow or descendant, no brother or sister, nor descendant of a deceased brother or sister, no paternal uncle or aunt, nor descendant of such deceased uncle or aunt. He left descendants of maternal uncles and aunts, both of the whole and half blood, to wit, first cousins, etc., of intestate, and hereinafter referred to as maternal whole or half blood cousins.

His maternal grandfather, Christian Barnhart, was married twice. First wife was Euphany Bodine, of which marriage were six children, half-blood brothers and sisters of decedent's mother. Second wife was Lydia Eastman, of which marriage were five children, one being de-

cedent's mother. Decedent's father and mother were first cousins. These maternal whole-blood first cousins were also paternal second cousins of intestate. Their grandmother, Lydia Eastman Barnhart, was a sister of intestate's paternal grandfather, Daniel Hitchcock Eastman.

It is claimed that, by section 90, Decedent Estate Law, these maternal half-blood cousins are excluded, for the reason that they are not of the blood of the intestate's ancestor, and that the whole-blood cousins take the whole farm. I am unable to agree with this construction. If these maternal half-blood cousins are excluded, and there was no maternal whole-blood cousin, resort would have to be had to the course of the common law, and, if no relative was found who would take thereunder, then the property would escheat to the state.

Then, again, if the construction claimed is correct, the maternal whole-blood cousins would inherit, even though they are not of the blood of the paternal ancestor; but, unless the maternal half-blood cousins are of the blood of the paternal ancestor, they are excluded. I do not think it makes any difference whether any of them are of the blood of the ancestor or not. Subdivision 4 of section 88 of the Decedent Estate Law, by reason of there being no person on the father's side to inherit, transfers this farm to certain relatives of the mother, and it is to her, and not this intestate, or his father, that we look to find who they are, to wit:

"Brothers and sisters of the mother of the intestate, and to the descendants of such as shall have died, or if all have died to their descendants."

The last part of subdivision 4 provides that:

"In all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the intestate's father or mother, as the case may be, or to their descendants in like manner as if they had been the brothers and sisters of the intestate."

So that this farm descends to these maternal whole and half blood cousins "in like manner as if they had been the brothers and sisters of the intestate." Beebee v. Griffing, 14 N. Y. 235, 239, 240. Brothers and sisters of the half blood are included in a statutory provision for descent to brothers and sisters, unless a contrary intention appears. Anderson v. Bell, 140 Ind. 375, 39 N. E. 735, 29 L. R. A. 541; Lynch v. Lynch, 132 Cal. 214, 64 Pac. 284; Sheffield v. Lovering, 12 Mass. 490, 29 L. R. A. 544, note "d" and cases cited.

The first clause of section 90, viz., "Relatives of the half blood and their descendants shall inherit equally with those of the whole blood and their descendants, in the same degree," may be applicable; but I am convinced that the second clause, viz., "unless the inheritance came to the intestate by descent, devise or gift from an ancestor, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance" is not applicable to the question presented. These whole-bloods inherit, not by reason of being of the blood of the ancestor, but by reason of being descendants of brothers and sisters of the mother of the intestate; and the half-bloods inherit for the same reason.

Suppose this farm had descended to the intestate from his mother, then I cannot see how the second clause of section 90 could ever have been intended to have any bearing, for the reason that maternal uncles and aunts and their descendants are always "of the blood" of the mother—may be half-blood, but that is "of the blood." It seems incredible that the Legislature intended that, after making provision to transfer real property in default of ancestral heirs to certain relatives of the other side—different family—nonancestral, it intended to provide that the maternal whole-blood uncles and aunts and descendants of such as shall have died, whether of the blood of the paternal ancestor or not, shall inherit; but if there is a maternal half-blood uncle or aunt, or descendant of such, they must be of the blood of the paternal ancestor, or they "shall be excluded." It is rare to find such a maternal cousin who has any of the blood of such a paternal ancestor.

In Farmers' Loan & Trust Co. v. Polk, 166 App. Div. 43, 151 N. Y. Supp. 618, Israel Corse made two trust deeds, one relating to personal and the other to real property, for the benefit of James K. Polk, who was a son of his sister. This nephew was given the income for life and the power of appointment to dispose of the corpus by his will, and in the event of his failure to exercise the power of appointment, the lawful kindred of said James K. Polk should become invested and entitled to said real property. Polk died without exercising the power of appointment. He left a half-brother Tasker Polk, by the marriage of his father to a subsequent wife, not of the blood of Israel Corse, who left children and grandchildren, who survived James K. Polk, and who claimed said real property, and the court held that the half-brother, Tasker Polk, took said real property as the lawful kindred of said James K. Polk under the provision of said trust deed, and that section 90 was not applicable.

In Stack v. Leberman, 169 App. Div. 92, 154 N. Y. Supp. 490, Mary Gannon, the owner of real property, died leaving a will whereby, after directing the payment of debts and funeral expenses, she gave: First. To her stepdaughter, Katie, $500. Second. To her sister, Ellen, $200. Third. To her daughter Theresa, during her life, the income of all the remainder and at her death the remainder to Theresa's heirs. Theresa died leaving no child or descendant, no parent, no brother or sister, nor a descendant of a deceased brother or sister, of the whole blood, but left said Katie, her half sister (different mothers); and the court held that Katie, half sister, was the heir of Theresa and took the property under the fourth paragraph of said will to the exclusion of the brothers and sisters of Mary Gannon and that section 90 was not applicable.

In Pond v. Erwin, 113 Ind. 243, 15 N. E. 272, intestate, having inherited an interest in land from her mother, left no descendants, nor brother or sister of the whole blood, but left maternal uncles and aunts and a half-brother, child by the marriage of her father to a second wife; and the court, in construing a statute similar to section 90, held that, if the deceased had also left surviving her a whole-blood or half-blood brother or sister on her mother's side (that is, of the blood of the

mother), he or she would have taken the estate which descended from the mother to the exclusion of one who was not of the same maternal blood, but that, as the deceased left no brother or sister, either of the whole-blood or half-blood, on the mother's side, her entire estate descended to kindred of the half-blood, her half-brother, the same as if he was of the whole-blood. Descent and distribution among kindred of the half-blood are discussed at length in the note to Anderson v. Bell, 140 Ind. 375, 39 N. E. 735, 29 L. R. A. 541, and also discussed in the note to Stockton v. Frazier, 81 Ohio St. 227, 90 N. E. 168, 26 L. R. A. (N. S.) 603.

I am of the opinion that this inheritance descends to both of these maternal whole and half blood cousins and a decree may be prepared accordingly. Decreed accordingly.