In the Matter of the Judicial Settlement of the Account of M. EUGENE CLARK, as Executor, etc., of JACOB M. HOORNBEEK, Deceased.

Surrogate's Court, Ulster County, December 4, 1929.

*Raymond G. Cox*, for the executor.

*H. Westlake Coons*, for Grace W. Briggs.

*Frank W. Brooks*, for Laura W. Stickney and others.

KAUFMAN, S. In the present proceeding to judicially settle the estate of the above-named testator, the court is asked to construe the will and direct the disposition of the funds and property remaining in the hands of the executor in accordance with such construction. The facts are not controverted and have been stipulated to be as hereinafter set forth.

On August 18, 1919, Jacob M. Hoornbeek executed his last will and testament which, in addition to directing the payment of his debts and funeral expenses and naming an executor, provided as follows:

" *Second.* All the rest and residue of my estate, both real, personal and mixed, of which I may die seized and possessed, and wheresoever situated, I give, devise and bequeath unto my Executor hereinafter named, in trust nevertheless upon the following terms and conditions, that he pay to my daughter Elizabeth Hoornbeek and to my mother Mary J. Grimley all of the income, interest and profits arising from my estate, and I direct that for the purpose of receiving an income therefrom that he invest the same in some safe institution or securities, and that he pay the interest and income therefrom to my said mother and daughter every four months equally, share and share alike, and at the death of my said mother or daughter then he pay the whole income in the same manner to the survivor, and in case my said mother does not survive me, then he pay the whole income to my said daughter Elizabeth as above directed, and if my said mother should survive my said daughter Elizabeth, then my said Executor is directed to immediately pay the corpus of my said estate to my said mother

absolutely, and in case my said daughter survives my mother, on the death of my mother, he is to pay the corpus of my said estate to my said daughter, but not however until she arrives at the age of thirty years.

" And in case of my death before my daughter arrives at the age of twenty-one years I hereby nominate and appoint as a suitable person as her guardian Mary J. Grimley, of the Village of Ellenville, N. Y.

" I also give and grant unto my Executor hereinafter named full power and authority to sell and dispose of any and all real estate of which I may die seized and possessed and to give good and sufficient deed or deeds of conveyance therefor as may appear to him to be for the best interest of my estate, and if my executor shall continue to hold any of my real estate when the time arrives for paying over the corpus of the estate to my daughter or my mother he can at his option reduce the same to cash or convey to them the said real estate still remaining unsold, instead of converting the same into cash and paying over the cash."

The testator died possessed of real and personal property on July 15, 1925, and the above will was admitted to probate in this court on July 22, 1925. Mary J. Grimley, the testator's mother, predeceased him, but he was survived by his daughter Elizabeth Hoornbeek. His wife, parents, grandparents, uncles and aunts were all dead, and he left no brothers or sisters or descendants thereof. The only blood relatives who survived him were his daughter Elizabeth and certain cousins who were descendants of his deceased uncles and aunts, who were, of course, great-uncles and great-aunts of Elizabeth.

Elizabeth Hoornbeek, the daughter, died intestate on April 15, 1926, before arriving at the age of thirty years, leaving no husband or descendants and no blood relatives except the descendants of the paternal great-uncles and great-aunts above-mentioned and an aunt, Grace W. Briggs, who was a half-sister of her deceased mother.

The descendants of the great-uncles and great-aunts on the father's side and the maternal aunt are now in controversy as to the final disposition of the estate. It is contended by counsel for the aunt that under the provisions of the will of Jacob M. Hoornbeek his residuary estate, both real and personal, was vested in his daughter Elizabeth Hoornbeek at the time of her death, and that having died intestate, it passed by virtue of the Statutes of Descent and Distribution to her aunt Grace W. Briggs as her sole heir at law and next of kin. On behalf of the paternal relatives it is asserted that under the terms of the will the gift of the residuary

estate to Elizabeth Hoornbeek was contingent upon her attainment of the age of thirty years, and that by her death before arriving at that age it was defeated and the property passed under the intestate laws to the cousins of the testator as his heirs at law and next of kin.

Before attempting to arrive at the proper construction of the will by the employment of subordinate rules of construction it is necessary to carefully examine the language of the instrument itself in the light of the circumstances which confronted the testator at the time he executed it and to learn, if possible, his intent in executing it, for as has been aptly said: " Rules for the construction of wills are for the purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction." (*Camman* v. *Bailey*, 210 N. Y. 19, 30.)

In seeking the intention of the testator not only an examination of the language of the will itself but a consideration of the facts surrounding and confronting the testator at the time of its execution is important. " The intention of the testator in disposing of his residuary estate is to be ascertained not by what occurred long after the execution of his will, but by what was, apparently, or presumably, in his contemplation, at the time he was making it. A testator is presumed to speak as of the time of executing his will and to base his calculations upon his dispositions taking effect." (*Matter of Hoffman*, 201 N. Y. 247, 255.)

At the time of executing the will in question the testator was possessed of real property valued at approximately $6,000 and of personal property worth about $5,000, from which the income could not have been large. His immediate family consisted of his daughter, Elizabeth, and his mother, Mary J. Grimley. His natural desire under the circumstances must have been to give to his mother and daughter, rather than to distant relatives, the benefit of his property. The will on its face denotes that such was his purpose. In it he made no mention whatever of his collateral relatives, but he did carefully work out what I am convinced he intended and believed to be a complete plan whereby his mother and daughter should be paid the income from his estate until the death of one of them, and upon the happening of that event the survivor should receive the corpus outright. Certainly there can be no doubt that it was his intention that his mother should receive his entire estate outright upon his daughter's death, in case she survived her, for he says in plain and unmistakable language, " if my said mother should survive my said daughter

Elizabeth, then my Executor is directed to immediately pay the corpus of my said estate to my said mother absolutely," and it is my opinion that it was his intention that in case his mother died first his daughter should profit equally as well as the mother would have done had the situation been reversed, but that because of his daughter's youth he did not desire her to have the actual handling of the property until she should arrive at the more mature age of thirty years. In other words, his intent was to postpone the time for payment until his daughter should become thirty rather than to make the gift contingent upon her attaining that age.

In this connection it is significant to note that where the testator in his will desired to denote a contingency he did so in clear and concise language. In making the gift to his mother contingent upon her survival of his daughter he says, " if my said mother should survive my said daughter Elizabeth;" in making the gift to his daughter contingent upon the prior death of his mother he says, " in case my said daughter survives my mother;" and in several other places he specified contingencies with similar clarity. In that part of the will which is claimed to make the gift to the daughter contingent upon her attainment of the age of thirty years, however, no such language is used. He does not say " if " or " in event " or " in case " my daughter arrives at the age of thirty years. What he does say is " on the death of my mother he is to pay the corpus of my said estate to my said daughter, but not, however, until she arrives at the age of thirty years." If the testator had intended the gift in that instance to be contingent it is reasonable to assume that he would have designated that contingency with the same clarity with which he marked the others.

It is urged that the words " to pay." in the provision for the daughter do not denote an immediate gift as would " give, devise and bequeath " or similar expression, and my attention is directed to a long line of cases holding that where there is no gift but a direction to executors and trustees to pay or to divide and pay at a future time the vesting in the beneficiary will not take place until that time arrives. As was said by Chief Judge CULLEN: " The rule has many exceptions, and in fact it may be fairly said that it is a rule more honored in the breach than in the observance." (*Dickerson* v. *Sheehy*, 209 N. Y. 592.) In this case there is no difficulty in finding justification for its breach, if breach it be.

As has already been said, from the examination of the whole will it is apparent that it was the intention of the testator that the estate should vest in the daughter, and that being the case, the rule attempted to be invoked must yield to the broader rule which requires that the intention of the testator must control.

In the words of that distinguished jurist, FRANCIS MILES FINCH: " The rule of construction founded upon a gift flowing only from a direction to divide has many exceptions and is to be used as an aid to ascertain the intention and not as a force to pervert it. I have observed in general that where it has prevailed it has been where no contrary intention was fairly indicated, and where its own force was somewhat strengthened and its indication corroborated by further facts." (*Matter of Tienken*, 131 N. Y. 391, 409.) (See, also, *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 580; *Dougherty* v. *Thompson*, 167 id. 472, 483, 484; *Matter of Crane*, 164 id. 71, 77, 79.)

Further reason for avoiding the application of the rule in this case is found in the fact that under the will all of the income from the estate was bequeathed to the daughter. Under the authorities this fact in itself seems to exempt the case from the application of the rule. (*Fulton Trust Co.* v. *Phillips, supra; Matter of Talbot*, 126 Misc. 80; affd., 215 App. Div. 724; *Matter of Schmitt*, 137 id. 286; *Everitt* v. *Everitt*, 29 N. Y. 39, 76; *Warner* v. *Durant*, 76 id. 133.) In the case last cited the Court of Appeals said: " There has been a distinction grafted upon it [the rule]. It is this: Where the gift is to be severed *instanter* from the general estate for the benefit of the legatee; and in the meantime, the interest thereof is to be paid to him; that is indicative of the intent of the testator that the legatee shall, at all events have the principal and is to wait, only for the payment until the day fixed." That this doctrine applies with equal force to a gift of the entire residuary estate as well as to that of a portion of the general estate is now resolved beyond doubt by the decision of the Court of Appeals in *Fulton Trust Co.* v. *Phillips* (*supra*). (See, also, *Matter of Talbot, supra.*)

Other reasons for this decision may be found in the time-worn doctrines that the law favors the vesting of remainders (*Camman* v. *Bailey, supra; Livingston* v. *Greene*, 52 N. Y. 118; *Matter of Brown*, 154 id. 313); that a construction which results in intestacy should not be favored (*Matter of Foster*, 133 Misc. 222); and that where a gift of income is created without limitation upon the time of enjoyment and with no disposition of the corpus, such gift must be construed as a gift of the corpus. (*Matter of Foster, supra; Matter of Allen*, 111 Misc. 93, 125, and cases cited.)

My conclusion is, therefore, that at the time of her death the residuary estate of Jacob M. Hoornbeek was vested in his daughter, Elizabeth Hoornbeek, and passed under the intestate laws to her heirs at law and next of kin.

The remaining problem in the case is to determine to whom the personal property is to be distributed and to whom the real

property passed. The claimant on the maternal side of the decedent's family is Grace W. Briggs, who was a child of George Briggs by his second wife, Mary Warren Briggs, and a half-sister of decedent's mother, Helen Briggs Hoornbeek, who was a child of said George Briggs by his first wife, Emily Ferguson Briggs. The claimants on the paternal side of decedent's family are cousins of decedent's father, Jacob M. Hoornbeek, in other words, descendants of great-uncles and great-aunts of the decedent.

The question as to the distribution of the personal property presents little difficulty. It is well settled that personal property under the circumstances passes to the aunt to the exclusion of the paternal relatives, even though she be of only the half blood. (Dec. Est. Law, § 98, as amd.; *Matter of Nichols*, 60 Misc. 299; *Hallett* v. *Hare*, 5 Paige, 315; Eager on Intestate Succession, 34, 100, 101.) I, therefore, hold that Grace W. Briggs is entitled to receive the personal property which passed to Elizabeth Hoornbeek under the will of Jacob M. Hoornbeek.

The inheritance of the real property presents a far more perplexing problem. To arrive at its solution it is vital to keep in mind the following facts: (1) That the real property in question came directly to Elizabeth Hoornbeek by devise from her father, Jacob M. Hoornbeek, without any intervening ownership; (2) that the only relatives who survived Elizabeth Hoornbeek upon her father's side were descendants of his uncles and aunts, that is to say, descendants of great-uncles and great-aunts of Elizabeth; (3) that these paternal claimants are of the blood of Jacob M. Hoornbeek; (4) that Grace W. Briggs, the only relative who survived Elizabeth upon her mother's side, was not a sister of the full blood of Elizabeth's mother, but only of the half blood; (5) that Grace W. Briggs is not of the blood of Jacob M. Hoornbeek.

Under the common law the real property in question would have passed to the paternal claimants to the exclusion of the maternal aunt, for they were of the blood of Jacob M. Hoornbeek and she was not, and the common law rigorously excluded those not of the blood of the ancestor from inheritance of an ancestral estate. (Remsen on Intestate Succession [2d ed.], pp. 100, 101, 103; Eager on Intestate Succession, 110, 111.) Unless this rule has been altered by statute applicable to the present case it must still control. (Dec. Est. Law, § 92, as amd.)

It is claimed that the common-law rule has been so modified as to permit the inheritance by the maternal claimant by the provisions of subdivision 4 of section 88 of the Decedent Estate Law, which provides: " If there be no such brothers or sisters of such father, nor any descendants of such brothers or sisters, to the

brothers and sisters of the mother of the intestate, and to the descendants of such as shall have died, or if all have died, to their descendants. * * * In all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the intestate's father or mother, as the case may be, or to their descendants in like manner as if they had been the brothers and sisters of the intestate."

Unquestionably this statute does modify the common-law rule in favor of brothers and sisters of the full blood of an intestate's mother in cases like that at bar, and if the maternal claimant in this case were a sister of the full blood of the decedent's mother I should have no hesitation in deciding that by virtue of these statutory provisions she inherited the real property in controversy to the exclusion of the paternal claimants. The obstacle to this otherwise easy solution is that Grace W. Briggs is not a sister of the decedent's mother but a half sister and the language of section 90 of the Decedent Estate Law, which provides: " Relatives of the half-blood and their descendants, shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance came to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

All doubt as to the construction to be given to section 90 seems to have been removed by the comparatively recent decision in *Rotenbach* v. *Young* (119 Misc. 267; affd., 206 App. Div. 775; affd., 237 N. Y. 620). In his extremely interesting and able opinion in that case Mr. Justice CROPSEY said: " The meaning of section 90 and its forerunners seems plain. * * * In considering its meaning the fundamental proposition that collaterals of the half blood did not inherit at common law and inherit under our statute only in so far as that right has been expressly given must not be lost to sight. In other words, the half blood can inherit only by virtue of section 90. If they do not come within that section they are excluded. No other section gives them any right."

Certainly no express legislative permission for the maternal half blood claimant in this case to inherit can be spelled out of section 90. On the contrary, her situation presents exactly the case in which permission to a relative of the half blood to inherit is withheld. By the language of the statute she is permitted to inherit " unless the inheritance came to the intestate by descent, devise or gift from an ancestor," in which case she " shall be excluded from such inheritance." As has been already pointed out, the real property involved in this litigation did come directly by devise to the decedent from her father, Jacob M. Hoornbeek, of whose blood the maternal claimant has none.

Nor do I agree with the contention that the exception to the legislative permission to half bloods to inherit was changed or eliminated by the first and last sentences of subdivision 4 of section 88, above quoted. It seems clear to me that the intention of the Legislature by those provisions was not to affect the rights of half bloods at all, but in certain cases of ancestral inheritance to do away with the common-law bar against inheritance by those not of the blood of the ancestor from whom the property was derived. The Legislature simply gave to a certain specified class of relatives of an intestate under certain specified conditions the right to inherit real property of the decedent even though they were not of the blood of the ancestor from whom the property came to the intestate. Being in contravention of the common law, the statute must be strictly construed. To say that it was intended to give additional rights to relatives of the half blood in derogation of section 90 is to pervert it to purposes for which it was not intended.

The decision of the Court of Appeals in *Beebee* v. *Griffing* (14 N. Y. 235) is cited as an authority to the contrary. I do not so regard it. In that case the opposing claimants were all " of the . blood " of the ancestor from whom the real property in dispute was derived, and the court merely decided that relatives of the half blood of such ancestor as well as relatives of his whole blood were included in the term " of the blood " as used in the statute. In the case at bar the situation is not at all similar. Here the paternal claimants are " of the blood " of Jacob M. Hoornbeek, but it is conceded that the maternal claimant is not.

The decision of the Appellate Division of the Fourth Department in *Matter of Mack* (179 App. Div. 298) is in point with the present case. However, that decision was severely criticised in *Rotenbach* v. *Young* (*supra*, see pp. 273, 274), which was unanimously affirmed by the Court of Appeals, and I consider its force to have been thus nullified. The same is true of *Matter of Milliman* (94 Misc. 7), which was decided some years prior to the *Rotenbach* case.

I, therefore, hold that the title to the real property which came to Elizabeth Hoornbeek by devise from her father, Jacob M. Hoornbeek, passed upon her death to the descendants of her paternal great-uncles and great-aunts to the exclusion of Grace W. Briggs.

Prior to the amendment of section 92 * of the Decedent Estate Law by chapter 224 of the Laws of 1923 * there might have been some merit to the contention asserted in one of the briefs that the descendants of the great-aunts do not share with the descend-

* Since amd. by Laws of 1925, chap. 606.— [Rep.

ants of the great-uncles in the inheritance. (See *Hunt* v. *Kingston*, 3 Misc. 309.) By that amendment, however, which took effect long before the death of Elizabeth Hoornbeek, the words " without distinction of sex " were added to the statute and the preferment of males over females which came down from the canons of descent was thereby abolished. The inheritance in the present case is, therefore, without distinction as to sex.

A decree is directed to be entered accordingly. Application for allowances may be made upon settlement of the decree. Settle on notice.